### TONY MARTINEZ v. JUANITA MARTINEZ

15 So. (2nd) 842          June Term, 1943
December 7, 1943          Division B

*Erle B. Askew* and *Clair A. Davis,* for petitioner.
*Casler & Douglas* and *Oxford & Oxford,* for respondent.

THOMAS, J.:

The order challenged by certiorari was entered by the Judge of the Tenth Judicial Circuit June 19, 1943. It placed the custody of the children of appellant and appellee with the latter and fixed certain amounts to be paid by the former for their support.

First, we will give a chronology of the proceedings in that court culminating in the decree and then the history of a suit instituted by the appellant, as plaintiff, against appellee, as defendant, in the Sixth Judicial Circuit embracing Pinellas County. Because of the two controversies there resulted not only confusion but also a clash of jurisdiction between these courts.

On May 19, 1943 appellee filed her bill in Polk County, in the Tenth Judicial Circuit, charging the appellant, her husband, with misconduct and alleging that they had become separated through no fault chargeable to her. She asked for the custody of their children and an award of money for their support. That day the court ordered the defendant, appellant here, to produce the children a week later and show cause why they should not be given into the care of their mother,

appellee in this appeal. Failure to comply, recited the order, would be considered contemptuous.

On June 10, 1943 the same judge entered an order, quoting the one we have just analyzed, finding that the first one had not been obeyed, directing that the husband bring the children into court the day following its service upon him and ordering that he show cause why he should not be punished for contempt of court. Nine days later the appellant filed an answer "including plea of privilege" in which he claimed he was a resident of Pinellas County, admitted the marriage and parentage of the children, denied misconduct on his part and made counter-charges of misbehavior by the appellee. Then, in his answer he asserted that the only service upon him of "any papers in connection with this suit" was the delivery to him, during a hearing in another suit, in Pinellas County, of a copy of the order of June 10, 1943.

This introduces the other controversy. So far we have detailed only the proceedings in the separate maintenance suit by the wife (appellee) against the husband (appellant) in the Tenth Judicial Circuit. Continuing, the answer contained averments that May 20, 1943, the day after the instant case was filed, suit was instituted in Pinellas County in the Sixth Judicial Circuit wherein the positions of the litigants were reversed. Appellant was plaintiff there and appellee, defendant. He sought divorce and custody of the children; summons issued and was served on the defendant two days later in Polk County. On the very day the second order was rendered in the Polk County suit, June 10, 1943, the defendant's petition for fees and suit money was presented to the Pinellas County court and she was awarded $500.00 for the services of her attorneys and $12.00 weekly for alimony pendente lite.

What we have recounted is gleaned from the record of the present case in the Circuit Court of Polk County as it was constituted at the time the circuit judge there heard the testimony upon which is based the order under question.

In the course of the inquest it developed that no service was perfected upon Tony Martinez, the defendant in the proceedings in Polk County, although an attempt to that end

had been made. Summons addressed to him was sent to the sheriff of Pinellas County May 22, 1943 and two days later returned by the officer with the notation that the defendant could not be found. There appeared to have been communications among attorneys in Pinellas, Polk and Hillsborough counties about the contentions of the parties litigant and at least one conference was attended by counsel representing appellant and appellee but nothing said or written could be construed as a substitute for service of process.

A copy of the order of June 10, 1943 signed by the Judge of the Tenth Judicial Circuit was given appellant that day at the court house at Clearwater in Pinellas County when the judge of the Sixth Judicial Circuit was entertaining appellee's petition for suit money and counsel fees. It is well to emphasize that this hearing was conducted at the instance of the appellee. In other words, as defendant in that suit she applied for and received fees for her counsel and alimony for herself. When this occurred process had not been served in the suit started by her against her husband in Polk County.

The scene of activity was then removed to Polk County where we find the appellant and his counsel appearing in response to the order of June 10, 1943. With them, in obedience to that writ—or, as they choose to express it, out of deference to the court—they took the children. Practically the entire period of the hearing was consumed by a colloquy among court and counsel about the exchange of letters by the attorneys, the conference they had attended, the attitudes they entertained, and the opinions they held. Much time was devoted, as it was in the briefs we have studied, to the question whether appellant had or had not the privilege of being sued in the county where he resided, Pinellas.

It will be recalled that the appellant had responded to the order of June 10, 1943, which, reciting that the one of May 19, 1943 requiring him to show cause "why the custody of [the] children should not be awarded the Mother" had not been obeyed, commanded him to produce the children. Which he did. It further required him to show cause "why he should not be punished for contempt of this Court." We have paused here to reiterate these provisions the more easily to

compare them with the order eventually entered and now under attack.

As the hearing neared an end appellee testified that $10.00 weekly would be required to support the children and that she was earning $18.00 each week. The judge in Pinellas County had already awarded her $12.00. It was her plan, so she testified, if given the custody of the children to keep them at the home of her mother on a farm ten miles from Lakeland while she continued her work in that City.

We revert now to the order entered after introduction of this proof. The court decided that the mother was a person fit to have the custody of the children and awarded them to her fixing $10.00 as the amount the father should pay each week for their support. We understand that this supplemented the allowance made by the judge of the Sixth Judicial Circuit nine days earlier.

We have found no testimony about the ability of the husband to pay these sums or the qualifications of the parents, individual or relative. Nor does the order seem entirely consistent with the matter intended to be adjudicated when the rule to show cause issued June 10, 1943.

Without pausing to determine procedural questions suggested by the record or presented by counsel we will delve into the fundamental problem of jurisdiction and for that purpose will epitomize the procedure as we have given it heretofore in detail: Suit for separate maintenance and custody of the children was commenced in Polk County. The following day one for divorce was instituted by the husband in another county and in it he, too, claimed custody of the children. Any matters litigable in the first could be determined in the second. No service had been accomplished in the suit in Polk County when the plaintiff there appeared in the court in Pinellas County, sought relief and secured it.

We are committed to the rule, often recognized by other courts in the United States, that in case of conflict between courts of concurrent jurisdiction the one first exercising jurisdiction acquires control to the exclusion of the other. Ex parte Sirmans, 94 Fla. 832, 116 So. 282. The question, then, is whether the Circuit Court of Polk County or the Circuit

Court of Pinellas first exercised jurisdiction. Suit was filed in the former first while the latter first heard a phase of the case at the instance of the plaintiff in the former.

There is an apparent conflict among the authorities about the exact circumstance which fixes the time when jurisdiction attaches, traceable probably to the nature of the particular controversy. Some hold that jurisdiction is obtained when the suit is commenced; others, when summons is served. The latter is more generally applied, but it is conceivable that there are exceptions, such as applications for intermediate relief which would in themselves constitute the exercise of jurisdiction.

A study of the situation with which we deal leads us to conclude that jurisdiction first attached in the Circuit Court of Pinellas County. Although the suit there was filed a day later service was perfected May 22, 1943, while as late as June 11, 1943 an alias summons was issued in the Polk County case. We incline to the view the question of jurisdiction could be decided on the lone feature of priority of process. We are frank to say, however, that we have been influenced by the circumstances that it was in the Circuit Court of Pinellas County that appellee sought and obtained relief; that not only had service not then been perfected in her suit in Polk County but it was not until then that notice even of the hearing in that county was served.

It seems to us that the maintenance of jurisdiction by the Circuit Court of Pinellas County, which has not only not been challenged by appellee but has actually been invoked by her, and continuance of jurisdiction by the Circuit Court of Polk County would create an intolerable condition. Certainly one of these tribunals should act to the exclusion of the other to avoid unseemly conflict of orders issued from time to time; to insure an expeditious and economical adjudication of the rights of appellant and appellee, and, more important, the welfare of their children.

The status of the suit in Pinellas County was presented by the answer. If it is established by fact as it was pleaded then the chancellor in Polk County should dismiss the cause.

We are fully conscious of the fact that the only order under scrutiny is the preliminary one relative to alimony and custody and we might confine our observation to its regularity, but in the face of the challenge to the court's jurisdiction which we consider of real merit we think that time and money can be conserved by disposing now of a matter so fundamental. If jurisdiction cannot have been properly exercised it is well to say so immediately for without it any orders must lose their efficacy.

The question of privilege, the paucity of testimony of the husband's ability, the lack of testimony of the character of the parents and the apparent inconsistency between the order to show cause and the order eventually entered are matters of small importance when compared with the one of conflicting jurisdiction.

We decide that the petition should be granted and the order of June 19, 1943 should be and it is quashed with directions to determine the truth or falsity of the allegations of the answer with reference to the suit in Pinellas County, and, if their verity may be established to proceed no further in the entertainment of the case on the merits. It is so ordered.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.