WILLIAM MARK OLSEN, APPELLEE AND CROSS-APPELLANT, V.
CHERIE L. OLSEN, PERSONAL REPRESENTATIVE OF THE
ESTATE OF HAROLD CLARE OLSEN, DECEASED,
APPELLANT AND CROSS-APPELLEE.
575 N.W. 2d 874

Filed March 27, 1998.   No. S-96-827.

Robert M. Harris and Randall L. Lippstreu, of Harris & Lippstreu, P.C., for appellant.

Paul E. Hofmeister, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WHITE, C.J.

This is an appeal by Cherie L. Olsen (Cherie Olsen), personal representative of the estate of her deceased husband, Harold Clare Olsen (Harold Olsen). Cherie Olsen appealed an order of the Banner County District Court awarding Harold Olsen $20,271.81 in an action on an accounting which originated from a cross-petition filed by Harold Olsen against his son, William

Mark Olsen (Mark Olsen). In a memorandum opinion filed October 10, 1997, the Nebraska Court of Appeals vacated the judgment and remanded the cause with directions to dismiss Harold Olsen's cross-petition, holding that the Banner County District Court lacked subject matter jurisdiction over the matter. We granted further review.

This case involves three separate lawsuits filed by the same parties involving many of the same issues.

Harold Olsen owned a life estate in certain real property in Banner County, Nebraska. On August 15, 1983, Harold Olsen and Mark Olsen entered into a contract in which Harold Olsen assigned his interest in the gross income from the life estate (hereinafter life-estate contract) to Mark Olsen. The life-estate contract required that Mark Olsen use the income to pay certain described debts of Harold Olsen. The contract also provided that once the debts were paid, the contract terminated and the income reverted back to Harold Olsen.

During the term of the contract, Harold Olsen continued to farm part of the property. Harold Olsen also leased out part of the property, but the payments he received were remitted to Mark Olsen. Mark Olsen also leased part of the property and farmed the remainder.

In 1986, Mark Olsen paid off all of Harold Olsen's obligations. In 1987, Harold Olsen and Mark Olsen had conversations about Mark Olsen's desire to place the life estate in the Conservation Reserve Program (CRP). Prior to placing the land in the CRP, Mark Olsen informed Harold Olsen that the Agricultural Stabilization and Conservation Service (ASCS) wanted a guarantee that Harold Olsen would not renege on the agreement if the ASCS signed the property into the program. Accordingly, on February 26, 1987, Harold Olsen signed an agreement (CRP agreement) which provided, "I [Harold Olsen] agree that farm land which I have a life estate in, I will honor William Mark Olsen's CRP contract in all its terms."

In February 1989, Harold Olsen brought suit against Mark Olsen in the Kimball County District Court to recover on a promissory note (hereinafter *Olsen I*). *Olsen I* is not part of the present appeal, but *Olsen I* is relevant to the case at bar. The only part of *Olsen I* that has been made a part of the record in

this appeal is the judgment of the Kimball County District Court.

While *Olsen I* was still pending, Mark Olsen filed suit against Harold Olsen in the Banner County District Court seeking to enjoin Harold Olsen from using the land which was the subject of the life-estate contract (hereinafter *Olsen II*). Harold Olsen filed a cross-petition in *Olsen II,* alleging that the life-estate contract had terminated in 1986; that on April 21, 1989, Harold Olsen's attorney had sent Mark Olsen a letter to inform Mark Olsen that the conditions of the life-estate contract had been fulfilled; and that Mark Olsen was still in possession of the property. Harold Olsen requested that he be restored possession of the property and that Mark Olsen be required to account for rents and profits Mark Olsen received subsequent to the termination of the life-estate contract. Mark Olsen later voluntarily dismissed his petition in *Olsen II,* and the case proceeded on Harold Olsen's cross-petition for an accounting.

On April 6, 1992, the Kimball County District Court entered judgment in *Olsen I.* The district court determined that all of Harold Olsen's obligations, subject to the life-estate contract, had been paid in full no later than January 1, 1987; that the life-estate contract terminated on January 1, 1987; that all the income from the life estate then reverted to Harold Olsen; and that Mark Olsen had received from Harold Olsen all the pasture rentals due him from Harold Olsen. The district court's findings did not reflect the amount of the income from the life estate since January 1, 1987.

Relying on this ruling, Harold Olsen applied to the Banner County ASCS office requesting that the life-estate property enrolled in the CRP program be reconstituted and that Harold Olsen, as owner-operator, succeed to a revised CRP contract. The ASCS ruled in Harold Olsen's favor, and in 1992, Harold Olsen began receiving the CRP payments.

On November 13, 1992, while *Olsen II* was still pending, Mark Olsen filed another suit against Harold Olsen in the Banner County District Court (hereinafter *Olsen III*), asking the court to declare that the CRP agreement Harold Olsen executed February 26, 1987, was in full force and effect and to issue an injunction enjoining Harold Olsen from violating or breaching

the terms of that contract. *Olsen II* and *Olsen III* were combined for trial.

Trial was held April 21, 1995. Harold Olsen died after the trial started, but before the court entered its judgment. Cherie Olsen, personal representative of Harold Olsen's estate, was substituted as a party, and the cases were revived.

On May 3, 1996, in a memorandum opinion and order, the Banner County District Court found that Mark Olsen owed rents and profits to Harold Olsen in the amount of $20,271.81, and that the CRP agreement could not reasonably be construed as an agreement by Harold Olsen allowing Mark Olsen to receive all payments accruing from Mark Olsen's contract with the CRP after Mark Olsen's assignment terminated. Accordingly, the district court dismissed Mark Olsen's *Olsen III* petition. Cherie Olsen appealed from the amount awarded in *Olsen II*, claiming that the evidence showed Harold Olsen was entitled to a landlord's share from the life estate of $59,856.88. Mark Olsen cross-appealed the *Olsen II* award, claiming that Harold Olsen was owed nothing from him, and he appealed the dismissal of his petition in *Olsen III*.

The Court of Appeals, in its memorandum opinion, dismissed Harold Olsen's action on cross-petition for an accounting in *Olsen II*, finding that the Banner County District Court lacked subject matter jurisdiction. The Court of Appeals held that Harold Olsen's cross-petition in *Olsen II* involved the " 'same parties, on the same subject, and to test the same rights' " that were involved in *Olsen I*. Therefore, the Court of Appeals held that Harold Olsen's remedy was within the confines of *Olsen I* rather than in raising the same issue by cross-petition in another county. Since *Olsen I* was still pending in the Kimball County District Court when *Olsen II* was filed in the Banner County District Court, the Court of Appeals held that the Kimball County District Court acquired jurisdiction over the matter first and that the Banner County District Court's assertion of jurisdiction over the matter was improper. The Court of Appeals also affirmed the dismissal of Mark Olsen's petition in *Olsen III*.

In her brief in support of her petition for further review, Cherie Olsen claims the Court of Appeals erred in (1) holding

that the Banner County District Court did not have subject matter jurisdiction because an earlier action was pending in Kimball County and (2) failing to reverse the judgment and remand the cause, directing the entry of judgment of $59,856.88 against Mark Olsen.

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Williams*, 253 Neb. 619, 573 N.W.2d 106 (1997); *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997).

Even though an extrajudicial act of a lower court cannot vest an appellate court with jurisdiction to review the merits of an appeal, the appellate court has jurisdiction and, moreover, the duty to determine whether the lower court had the power, that is, the subject matter jurisdiction, to enter the judgment or other final order sought to be reviewed. *In re Estate of Andersen*, 253 Neb. 748, 572 N.W.2d 93 (1998); *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997).

As stated previously, the judgment in *Olsen I* is the only part of that case made a part of the record herein. The fact that Mark Olsen brought a counterclaim and that the Kimball County District Court, in adjudicating the counterclaim, made particular determinations as to the parties' rights and interests in the life-estate contract is evident from the judgment in *Olsen I*. Specifically, the court determined that all of Harold Olsen's debts were paid in full no later than January 1, 1987, and that as of that date the contract terminated and all the income from the life estate reverted back to Harold Olsen.

The record also indicates that while *Olsen I* was pending, Harold Olsen filed a cross-petition against Mark Olsen in Banner County, which became the basis for *Olsen II* after Mark Olsen voluntarily dismissed his petition. See Neb. Rev. Stat. § 25-603 (Reissue 1995) (where setoff or counterclaim has been presented, defendant shall have right of proceeding to trial on his claim, although plaintiff may have dismissed his action).

In his cross-petition, Harold Olsen alleged that his obligations pursuant to the life-estate contract had been paid in full, that the life-estate contract had terminated, and that all the gross income in the life estate now belonged to him, and he prayed for

an accounting of all the rents and profits from the life estate that were retained by Mark Olsen.

In *Lincoln Joint Stock Land Bank v. Fuller*, 132 Neb. 677, 680, 273 N.W. 14, 16 (1937), we stated:

We are familiar with the rule announced in *Terry v. State*, 77 Neb. 612, 110 N.W. 733, in which we said: "It is a well-settled rule that where one court of competent jurisdiction in a proceeding *in rem* obtains jurisdiction of the *res*, or, in other words, the thing in controversy, no other court can acquire jurisdiction over it."

"In the strict sense of the term, a proceeding 'in rem' is one which is taken directly against property or one which is brought *to enforce a right in the thing itself.*" (Emphasis supplied.) Black's Law Dictionary 793 (6th ed. 1990).

It is clear from the judgment in *Olsen I* that Mark Olsen's counterclaim was "brought to enforce a right" in the income from the life estate. The judgment makes specific reference to the August 15, 1983, contract, and it quotes the pertinent provisions regarding reversion of the income to Harold Olsen upon payment of the obligations. It is also clear that the "thing in controversy" in *Olsen II* is the income from the life estate.

Therefore, when Mark Olsen filed his counterclaim in *Olsen I*, the Kimball County District Court obtained jurisdiction over the parties' rights in the life-estate contract first, to the exclusion of any other court of concurrent jurisdiction. Where an action is pending in two courts, the court first acquiring jurisdiction will hold jurisdiction to the exclusion of the other. See, *In re Estate of Kentopp. Kentopp v. Kentopp*, 206 Neb. 776, 295 N.W.2d 275 (1980); *Bell v. Dingwell*, 91 Neb. 699, 136 N.W. 1128 (1912). See, also, *Clawson v. Millard*, 934 S.W.2d 899 (Tex. App. 1996) (court in which suit is first filed acquires dominant jurisdiction to exclusion of other coordinate courts); *Seattle Seahawks v. King County*, 128 Wash. 2d 915, 913 P.2d 375 (1996) (court in which suit is first filed has jurisdiction and control of all subsequent proceedings); *Minnesota Mut. Life Ins. v. Anderson*, 410 N.W.2d 80 (Minn. App. 1987) (in general, when courts have concurrent jurisdiction, first court to acquire jurisdiction has priority in considering case); *Fantony v. Fantony*, 36 N.J. Super. 375, 115 A.2d 610 (1955) (in in rem

action, court first acquiring jurisdiction will retain it regardless of subsequent action by different court); *Martinez v. Martinez,* 153 Fla. 753, 15 So. 2d 842 (1943) (first court exercising jurisdiction acquires control to exclusion of other courts of concurrent jurisdiction).

Since the Kimball County District Court never relinquished jurisdiction over the life-estate contract, that court maintained jurisdiction over the matter to the exclusion of all courts of concurrent jurisdiction. Therefore, we cannot say that the Court of Appeals erred in finding that the Banner County District Court lacked jurisdiction.

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

AFFIRMED.