941 So.2d 451 (2006)
Edgar Ricardo ARJONA a/k/a Ricardo Arjona, Appellant,
v.
Leslie TORRES a/k/a Leslie Arjona, Appellee.
No. 3D06-1395.
District Court of Appeal of Florida, Third District.
October 25, 2006.
*452 Greene Smith McMillan and Cynthia L. Greene, Miami; Leinoff & Lemos, Coral Gables, for appellant.
Lauri Waldman Ross; Elser Foster-Morales and Marsha B. Elser, Miami, for appellee.
Before CORTIÑAS,[1] ROTHENBERG, and LAGOA, JJ.
ROTHENBERG, Judge.
Edgar Ricardo Arjona a/k/a Ricardo Arjona appeals from a non-final order denying his motion to dismiss and/or abate the dissolution of marriage proceedings initiated by his wife, Leslie Torres a/k/a Leslie Arjona, in Miami, Florida. We affirm.
The Arjonas were married in Nevada in 1992, and have two minor children who were born in Puerto Rico. Mrs. Arjona is a United States citizen who resided in Florida until the parties married, while Mr. Arjona is a Guatemalan citizen. The Arjonas moved to Mexico in 1992 and resided there until 1999 when they relocated to Miami. Mr. Arjona returned to Mexico without his wife and children, and in July 2001, Mrs. Arjona returned to Mexico with the minor children in an attempt to reconcile with her husband. In August 2002, Mrs. Arjona and the children returned to Miami where they have continuously resided.
On August 19, 2002, Mrs. Arjona filed a petition for dissolution of marriage in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County ("circuit court"). As Mrs. Arjona did not meet the six-month residency requirement,[2] the *453 circuit court granted Mr. Arjona's motion to dismiss, which challenged the circuit court's subject matter jurisdiction, while reserving jurisdiction to determine if Mrs. Arjona should be allowed to amend her petition to seek separate maintenance.
On September 25, 2002, Mr. Arjona filed a petition for divorce in Mexico, requesting that he be awarded custody of the minor children. On October 23, 2002, Mrs. Arjona amended her petition in Miami, seeking custody of the children, maintenance, and child support. Thereafter, on December 6, 2002, the Mexican court granted Mrs. Arjona temporary custody of the children and ordered her husband to provide temporary support. On December 13, 2002, the circuit court abated the wife's action, pending a resolution of the husband's Mexican action.
After Mrs. Arjona unsuccessfully challenged the Mexican court's jurisdiction, the Mexican court entered a final judgment denying Mr. Arjona's petition for divorce, finding that he was unable to establish any of the alleged grounds for divorce, and this ruling was upheld on appeal in June 2005.
On November 4, 2005, Mr. Arjona filed a renewed petition for dissolution of marriage in Mexico, asserting that his wife had abandoned the marital home. Unlike his September 2002 petition, in this petition, Mr. Arjona did not specifically seek custody of the minor children. However, on December 13, 2005, prior to being served with the renewed Mexican petition,[3] Mrs. Arjona filed a petition for dissolution of marriage in the circuit court, and served her husband with the petition the following day. In this petition, Mrs. Arjona sought a determination as to the primary residential responsibility for the minor children and an adjudication of the parties' financial matters.
On February 2, 2006, Mr. Arjona filed a "Verified Emergency Motion for Temporary Custody by Special Appearance," seeking the circuit court's "intervention pursuant to Fla. Stat. 61.517." In this motion, he asserted that the children, who have resided with his wife in Miami-Dade County since 2002, were being mistreated and abused. Following a hearing held on February 7, 2006, the trial court denied Mr. Arjona's motion without prejudice.
Shortly thereafter, on February 27, 2006, Mr. Arjona filed a "Motion to Dismiss and/or Abate Proceedings by Special Appearance," asserting that he filed his divorce action in Mexico before his wife filed her divorce action in the circuit court, and therefore, "[p]ursuant to Florida law and the UCCJEA [Uniform Child Custody Jurisdiction and Enforcement Act], it is clear that because Mexico correctly assumed jurisdiction first, Florida must defer to it in resolving all matters." In response, the wife filed the affidavit of her Mexican attorney, averring that there were no custody proceedings pending in Mexico. Mr. Arjona also submitted an affidavit from an expert, who averred that, although the husband's renewed Mexican petition does not seek custody of the children or division of marital assets, if the Mexican court grants a divorce, it is required to decide custody and financial issues in its final decision.[4]
*454 On May 12, 2006, the trial court denied Mr. Arjona's motion to dismiss, finding that the circuit court has jurisdiction over the competing Mexican case. The circuit court found that, pursuant to Mabie v. Garden Street Management Corp., 397 So.2d 920 (Fla.1981), and Martinez v. Martinez, 153 Fla. 753, 15 So.2d 842 (1943), the date of service of process, not the date of the filing of the complaint, governs jurisdictional conflicts. The circuit court also denied Mr. Arjona's request to abate the action, finding that the action in Florida contained a count for custody and that Florida is the children's undisputed home state.
In this non-final appeal, although Mr. Arjona does not challenge the circuit court's jurisdiction to dissolve the marriage and to determine all financial issues, he contends that the trial court erred by denying his motion to dismiss and/or abate the circuit court's proceeding regarding the initial child custody determination. We disagree.
To resolve the issues before us requires a review and an interpretation of the UCCJEA. The parties, therefore, agree that the proper standard of review is de novo. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006)("The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review.").
The Uniform Child Custody and Jurisdiction Act ("UCCJA") became effective in Florida on October 1, 1977. Thereafter, on October 1, 2002, the UCCJA was repealed and replaced with the UCCJEA. The general purposes of the UCCJEA are to avoid jurisdictional competition and conflict with other courts in child custody matters; promote cooperation with other courts; insure that a custody decree is rendered in the state which enjoys the superior position to decide what is in the best interest of the child; deter controversies and avoid relitigation of custody issues; facilitate enforcement of custody decrees; and promote uniformity of the laws governing custody issues. § 61.502, Fla. Stat. (2005). The UCCJEA is, therefore, a jurisdictional act which controls custody disputes. It does not deal with priority of dissolution actions. A foreign country is treated as if it were a state of the United States for purposes of this act. § 61.506, Fla. Stat (2005).
Section 61.514, Florida Statutes (2005), of the UCCJEA, unequivocally limits jurisdiction to determine initial custody matters (except for temporary emergency matters) to the "home state" of the child, and section 61.503(7) defines "home state," in pertinent part, as "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding." Section 61.514, Florida Statutes (2005), provides as follows:
Initial child custody jurisdiction.
(1) Except as otherwise provided in s. 61.517, a court of this state has jurisdiction to make an initial child custody determination only if:
(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
(b) A court of another state does not have jurisdiction under paragraph (a), or *455 a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under s. 61.520 or s. 61.521, and:
1. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
2. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
(c) All courts having jurisdiction under paragraph (a) or paragraph (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under s. 61.520 or s. 61.521; or
(d) No court of any other state would have jurisdiction under the criteria specified in paragraph (a), paragraph (b), or paragraph (c).
(2) Subsection (1) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
(3) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.
Under the repealed UCCJA, Florida had jurisdiction to make an initial child custody determination under numerous circumstances. For example, in addition to jurisdiction based on the child's "home state," Florida could also have assumed jurisdiction if it was in the child's best interest due to the child's and one parent's significant connection with Florida. See § 61.1308, Fla. Stat. (2001). The UCCJEA, however, gives jurisdictional priority to the child's home state. Section 61.514 of the UCCJEA provides that, except under limited exceptions, Florida has jurisdiction to make an initial child custody determination only if Florida is the child's home state. The UCCJEA grants an exception to the home state jurisdictional requirement when "a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum," due, in part, to the "significant connections" that the child and one parent has with Florida. § 61.514(1)(b), Fla. Stat. (2005)(emphasis added). Therefore, under the UCCJEA, if Florida is not the child's home state, a child's significant connection with Florida is no longer sufficient to confer subject matter jurisdiction upon a Florida court unless the child's home state has declined to exercise its jurisdiction.
In the instant case, the parties do not dispute that Mrs. Arjona and the children have continuously resided in Miami-Dade County since 2002. Thus, when Mrs. Arjona filed her petition for dissolution of marriage in the circuit court in 2005, Florida, not Mexico, was the children's home state. As Florida is the children's home state, we conclude that the circuit court has exclusive jurisdiction to determine child custody issues. See § 61.514(1)(a), Fla. Stat. (2005); see also Nesa v. Baten, 290 A.D.2d 663, 736 N.Y.S.2d 173 (N.Y.App.Div.2002)(upholding dismissal of a petition filed in New York seeking custody of the children for lack of subject matter jurisdiction because New York was not the children's "home state"); In re Calderon-Garza, 81 S.W.3d 899 (Tex.App.2002)(holding that child's "home state" for purposes of the UCCJEA was Texas, and thus the Texas court, not the Mexican court, had jurisdiction over the paternity proceeding); In re McCoy, 52 S.W.3d 297 (Tex.App.2001)(holding that after Arkansas became the children's "home state," the Qatari court no longer had power *456 to confer jurisdiction over the child custody dispute to the Texas court).
Mr. Arjona argues that although Florida is the "home state" of their children, because he filed his renewed petition for dissolution of marriage on November 4, 2005 in Mexico before his wife filed for dissolution in Florida on December 13, 2005, that section 61.519 applies. Section 61.519, Florida Statutes (2005), provides, in pertinent part, as follows:
Simultaneous proceedings.
(1) Except as otherwise provided in s. 61.517, a court of this state may not exercise its jurisdiction under ss. 61.514-61.524 if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child had been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under s. 61.520.
(2) Except as otherwise provided in s. 61.517, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to s. 61.522. If the court determines that a child custody proceeding was previously commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this part does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.
Thus, Mr. Arjona argues that pursuant to section 61.519 because his dissolution proceeding was commenced in Mexico before the Florida proceeding was commenced, Florida was required to communicate with the Mexican court to determine which court should hear the case.
Mrs. Arjona counters with three arguments: (1) that because she served Mr. Arjona before he served her, and the Florida proceeding was perfected prior to perfection of service regarding the Mexican proceeding, jurisdiction lies in Florida; (2) while Mr. Arjona's initial action for dissolution in Mexico filed in 2002 included child custody issues, the dissolution action he filed in 2005 did not, and Mrs. Arjona's dissolution action filed in Miami specifically includes resolution of child custody issues; and (3) that because Florida is the children's "home state" Mexico by definition cannot exercise jurisdiction because to do so would not be in substantial conformity with section 61.514. Thus, Mrs. Arjona contends that Florida was not required to communicate with the Mexican court.
We conclude that because Florida is the "home state" of the children and Florida has not declined to exercise jurisdiction over the custody issues of the children, the proceedings in Mexico were not commenced substantially in conformity with the jurisdictional requirements of section 61.514. Thus, the communication requirement of section 61.519 has no application in the instant case. Because we conclude that Mexico lacks subject matter jurisdiction over the child custody issues herein, we decline to address and resolve the now collateral issues of whether "commencement" of a child custody matter is governed by the date an action is filed or when service is perfected, and whether the filing of a dissolution proceeding in Mexico which does not specifically include child custody issues, is a "child custody proceeding" within the meaning of the UCCJEA.[5]
*457 Affirmed.
NOTES
[1] Judge Cortiñas did not hear oral argument, but participated in the decision.
[2] Section 61.021, Florida Statutes (2002), titled "Residence requirements," provides: "To obtain a dissolution of marriage, one of the parties to the marriage must reside 6 months in the state before the filing of the petition."
[3] Mr. Arjona concedes that he served his wife with the renewed Mexican petition on January 10, 2006.
[4] Mr. Arjona's expert's affidavit provides:

Even though [Mr. Arjona's] Complaint does not specifically request custody of the children or division of marital assets, if the Mexican Court decides to grant the divorce, Articles 283, 287 and 288 of the Civil Code require the court, in its final decision, to determine custody of the children, divide the couple's property, require the culpable party to pay alimony to the innocent party, and to assure that the needs of the children are provided for.
[5] We note that the Mexican court has now granted Mrs. Arjona's motion to dismiss the dissolution proceeding filed by Mr. Arjona in Mexico, finding that it lacks subject matter jurisdiction as the Arjonas have lived separately since May of 2002, the marital domicile is no longer in Mexico, and there is no allegation that Mrs. Arjona "abandoned the marital domicile in an unjustified fashion." As there is no pending proceeding in Mexico, the dissolution of marriage, child custody issues, and financial matters are indisputably properly before the Circuit Court.