BLACK, Judge.
In this consolidated appeal, M.A.C., the father, challenges two orders. Both orders issued from the Twelfth Judicial Circuit Court in Sarasota County; however, the first order issued out of the South County division and the second order issued out of the North County division. In the South County order, the court declined to exercise jurisdiction and dismissed the father’s petition for paternity and other relief based on the conclusion that Florida is not the home state of J.D.C., the child. In the North County order, the court transferred the father’s emergency motion for return of the child and for contempt to the South County division and dismissed the father’s North County division case with prejudice. Because the South County court erred in concluding that Florida was not the home state of the child, we reverse and remand the South County order. However, we affirm without comment the North County order.
I. BACKGROUND FACTS
On December 9, 2010, the father, pro se, filed numerous family law forms in South County, Sarasota. Included within his forms was a “Petition to Determine Paternity and For Related Relief.” Under the petitioner’s request, the father checked the box for the court to enter an order that adopts or establishes a parenting plan containing provisions for time-sharing. Under the same section, he also handwrote: “Looking for hiring for visitations because the other parity’s] address is unknown. She keeps moving from one place to the other.” Along with the petition, the father also filed a notice of related cases, which referenced an administrative case opened by the Department of Revenue (DOR). The DOR started a proceeding against the father to establish child support after M.D.C., the mother, received public assistance for J.D.C. As a part of the administrative case, DOR entered a final order of paternity, establishing that M.A.C. was the father of J.D.C.
After the father filed his form petition with the court, he served a summons on the mother. The mother responded to the summons by filing an unsworn letter. In the letter, she objected to the Florida court having jurisdiction, and she requested that the court deny the father’s request. She indicated that she had been the sole caretaker for J.D.C. since his birth and that the father had only seen J.D.C. a total of ten times, the last time being in March 2010. She stated that J.D.C. was born on November 3, 2009, and that she moved to *1052 Florida a couple of months later. Finding no support from the father and having no place to live, she claimed that she moved to North Carolina on September 7, 2010. She noted that the father made no attempt to contact her until she received the summons. She stated that she had housing, a job, medical care, and daycare for J.D.C. in North Carolina, and she requested that the father bring any custody case in North Carolina because she did not have money to travel to Florida or to hire an attorney.
After the mother filed her letter, the court entered its “Order Regarding Jurisdiction/Forum Non Conveniens.” The order stated that the administrative proceeding established that M.A.C. was the father; thus, the only issues pertaining to the child in the father’s “paternity-type action” involved time-sharing and parental responsibility. The order noted that the mother’s letter was unsworn but that it indicated that she had resided in North Carolina since September 7, 2010. It then went on to state that Florida would have jurisdiction only if it was the home state of the child. However, based on the record at that point in time, the court concluded: “There is no reason known ... that would establish that North Carolina would not have jurisdiction as to this child.” The order also indicated that the mother raised an inconvenient forum issue. Because the court could not determine whether it had jurisdiction, it ordered the father to file a Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) affidavit; it ordered the mother to file a sworn affidavit, under oath before a notary, attesting to the allegations in her letter; and it ordered both parties to file affidavits addressing the statutory factors listed under section 61.520(2)(a)-(h), Florida Statutes (2010), the inconvenient forum section of the UCCJEA.
Although the court did not rule on any issues in its “Order Regarding Jurisdiction/Forum Non Conveniens,” the father filed a motion for rehearing. In his motion, he requested that the court enter an order declaring Florida to be the home state of J.D.C. for purposes of establishing child support and time-sharing. The court did not address this motion because it was premature.
The father then filed his UCCJEA affidavit. In the affidavit, he listed the mother’s addresses from January 2010 until September 2010 as Florida addresses and he listed her address from October 28, 2010, to the time of filing the affidavit as a North Carolina address. The mother filed a notarized, handwritten letter, indicating that all of the statements in her previous letter were true. She also stated that she had been out of work and that J.D.C. had been out of school since March 2011. She stated that they were going to get back to work and school once social services received her paperwork. The notary stamp did not state whether the letter was sworn under oath or whether the mother presented identification or was personally known by the notary. The stamp also did not contain an expiration date; instead, the notary signed her name next to the stamp and handwrote the expiration date for her commission.
Without conducting a hearing on the matter, the South County court entered an order dismissing the father’s petition. The court stated:
1. Per the UCCJEA Affidavit, filed by the Petitioner, indicating that the Respondent and child resided in Venice, Florida, until September 2010, and the Respondent’s attestation that she and the child began residing in North Carolina on September 7, 2010, the Court finds that North Carolina is the appropriate *1053 jurisdiction to consider a paternity action.
2. The Petitioner did not file his action in Sarasota County, Florida, until December 10, 2010. Florida was not the “home state” of the child “... for at least six (6) consecutive months immediately before the commencement of a child custody proceeding,” as required by F.S. 61.503(7).
3. F.S. 61.514(l)(a) is also applicable. A reasonable interpretation under these facts is that Florida should not make the “initial child custody determination,” as North Carolina is the appropriate jurisdiction, and present information concerning the child is readily available in that state. Hindle v. Fuith, 33 So.3d 782 (Fla. 5th DCA 2010); Holub v. Holub, [54 So.3d 585 (Fla. 1st DCA 2011).]
After the court entered the final order, an attorney with Legal Aid of Manasota filed a limited notice of appearance on behalf of the father. The father, represented by counsel, then simply amended his previous motion for rehearing and filed it. The court denied the motion, and the father filed his notice of appeal in that case on May 12, 2011.
II. ANALYSIS
The standard of review for the South County order is de novo because the trial court ruled that Florida does not have jurisdiction under the UCCJEA as a matter of law. See N.W.T. v. L.H.D., 955 So.2d 1236, 1238 (Fla. 2d DCA 2007). The UCCJEA is a jurisdictional act that governs subject matter jurisdiction over child custody matters. Id.; see also § 61.502 (stating the general purposes of the UC-CJEA). Section 61.503(4) defines a “child custody proceeding” as “a proceeding in which ... visitation with respect to a child is an issue.” Section 61.514 “unequivocally limits jurisdiction to determine initial custody matters (except for temporary emergency matters) to the ‘home state’ of the child.” Arjona v. Torres, 941 So.2d 451, 454 (Fla. 3d DCA 2006). “Home state” is defined in section 61.503(7) as “the state in which a child lived with a parent or a person acting as a parent for at least [six] consecutive months immediately before the commencement of a child custody proceeding.” Section 61.514(1) states as follows:
(1) Except as otherwise provided in s. 61.517 [the section dealing with “temporary emergency jurisdiction”], a court of this state has jurisdiction to make an initial child custody determination only if:
(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
(b) A court of another state does not have jurisdiction under paragraph (a), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under s. 61.520 [the “inconvenient forum” section of the UC-CJEA] or s. 61.521 [the section dealing with declination of jurisdiction by reason of conduct], and:
1. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
2. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
*1054 ce) All courts having jurisdiction under paragraph (a) or paragraph (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under s. 61.520 or s. 61.521; or
(d) No court of any other state would have jurisdiction under the criteria specified in paragraph (a), paragraph (b), or paragraph (c).
The father argues that the court erred when it determined that Florida was not the home state of J.D.C. He contends that the court should have looked back from December 9, 2010,[1] which was the date he filed the petition, to determine if at any time in the six months prior to that date Florida was J.D.C.’s home state. He asserts that the mother’s letter shows she had lived continuously in Florida for six months — from sometime in early 2010 until September 2010 — prior to the father’s filing of the petition and because the mother had only lived in North Carolina for a period of three months prior to the filing of the petition, North Carolina could not qualify as the home state. We agree.
The language in the jurisdiction provision of section 61.514(l)(a), which provides for jurisdiction at any time during the six months that precede the filing of the petition, and the definition of home state, which requires the six consecutive months to immediately precede the filing, seem to conflict. Sarpel v. Eflanli, 65 So.3d 1080, 1084 (Fla. 4th DCA 2011) (and cases cited therein).
[However,] the inclusion of the words “immediately before the commencement of a child custody proceeding” in the definition of “home state” should not be read so as to essentially eliminate and render meaningless the provision allowing for the assertion of jurisdiction if the state qualified as the child’s home at any time within the six months preceding the filing of the custody proceeding.
Id. Therefore, the home state determination under section 61.514(l)(a) allows for Florida to exercise jurisdiction if, at any time within the six months preceding the filing of the petition, Florida qualified as the home state. Id.[2] We agree with the sound reasoning in Sarpel.
Here, the trial court failed to look back to June 9, 2010, six months prior to the filing of the father’s petition, to determine if Florida qualified as the home state at any time between June 9, 2010, and December 9, 2010, the date he filed his petition. While the notary stamp on the mother’s letter fails to indicate whether the mother swore to the letter under oath and while the lack of a commission date on the stamp concerns us, the mother’s letter and the father’s UCCJEA affidavit both indicate that the mother moved to North Carolina in September 2010. Thus, the parties do not dispute this fact and the technical deficiencies regarding the notary stamp are not dispositive of the outcome in this case. Furthermore, the mother’s letter indicated that J.D.C. was born on November 3, 2009, and that she moved to Florida a couple of months later, which would be approximately January 3, 2010. The father’s UCCJEA affidavit also confirms this; thus, it appears there is no dispute regarding this date either. Based on the parties’ agreement on these dates, the mother lived in Florida with J.D.C. from January 3, 2010, until September 7, *1055 2010, a total of eight consecutive months. September 7, 2010, is within the six-month period prior to the father’s filing of his petition. Thus, Florida qualifies as the home state under the UCCJEA and the South County court had jurisdiction to make the initial time-sharing determination.[3] Accordingly, we reverse the trial court’s ruling on this issue.
However, it appears that the mother raised an issue regarding inconvenient forum and that the trial court has not definitively ruled on this issue. In the mother’s letter, she stated that she does not have the money to travel to Florida or to hire an attorney to represent her in Florida. And although the trial court appears to touch upon this issue in the third paragraph of its order, the court references section 61.514(l)(a) in this paragraph and not section 61.520, the inconvenient forum section. The court also cites to cases regarding home state determinations in this paragraph and not cases pertaining to inconvenient forum issues. See Hindle v. Fuith, 33 So.3d 782 (Fla. 5th DCA 2010); Holub v. Holub, 54 So.3d 585 (Fla. 1st DCA 2011). The trial court clearly recognized the inconvenient forum issue in its “Order Regarding Jurisdiction/Forum Non Conveniens,” and it clearly directed both parties to address the relevant inconvenient forum factors listed in section 61.520(2)(a)-(h). However, there is nothing in the record showing that the parties ever did so or that the trial court ever considered those factors or ruled upon the issue. Thus, based on our review of the record, the trial court has not ruled on this issue, and we must remand this issue to the trial court. Upon remand, the trial court may still decline to exercise jurisdiction after considering the statutory factors listed in section 61.520(2)(a)-(h).[4]
Reversed and remanded South County order; Affirmed North County order.
KELLY and KHOUZAM, JJ., Concur.

. The trial court’s order states that the father filed his petition on December 10, 2010; however, the clerk’s stamp clearly shows that the father filed the petition on December 9, 2010.

. We note that Sarpel did not issue until after the trial court rendered its order; thus, the trial court did not have the benefit of that opinion.

. Because the parties agree regarding the dates that the mother lived in Florida and because those dates are the basis for our reversal on the home state jurisdiction issue, the father's argument that the trial court erred by failing to hold an evidentiary hearing before making the home state determination is moot.

. The father also argues that trial court erred in failing to hold an evidentiary hearing prior to the court making an inconvenient forum determination. While this argument is perplexing due to the court’s failure to rule on this issue, we simply note here that upon remand, the court should give the father notice and an opportunity to be heard on this issue. Cf. Douglas v. Johnson, 65 So.3d 605 (Fla. 2d DCA 2011).