MILLER, J.
N.B., the mother, challenges a final judgment terminating her parental rights. On appeal, she argues that the lower tribunal's exercise of jurisdiction failed to comport with the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), thus rendering the final judgment void ab initio .[1] For the reasons set forth below, we disagree and affirm the final judgment under review.
In January 2017, the mother gave birth to a son in Miami-Dade County, Florida. Although the mother was unmarried at the time of the child's birth, she remained involved in an amorous relationship with D.M., the child's biological father. In September 2017, the mother and father temporarily traveled to California with the child to escape the forecasted path of destruction of Hurricane Irma. Upon their arrival in California, the parents left the child in a short-term vacation rental without air conditioning. The child was restrained in a car seat, without care or supervision, for an indeterminate number of hours. The child's cries eventually alerted neighbors to his plight. Law enforcement officers were summoned, and the child was medically evaluated and placed in emergency foster care in California. Both parents were subsequently arrested, incarcerated for approximately one week, and charged with child endangerment and negligence.
On September 13, 2017, the Los Angeles County Department of Children and Family Services invoked the temporary emergency jurisdiction of the California courts, pursuant to the UCCJEA, by initiating juvenile dependency proceedings.[2] On September 18, 2017, the Superior Court of California, Los Angeles County conducted a detention hearing, with the mother present. At the hearing, the court appointed counsel to represent the mother. The court rendered a threshold determination regarding the applicability of the UCCJEA and apprised all parties of its intent to facilitate communication between the supervising judge of the California court and the Eleventh Judicial Circuit Court of Florida. Thereafter, the court informed the *1166 parents that jurisdictional and dispositional issues would be heard at a future hearing, and an unfavorable resolution was possible in the event of a failure to appear. The jurisdictional review hearing was calendared for October 31, 2017. Although the mother remained represented by counsel, she abstained from participation in the communication between the California and Florida courts and neglected to materialize at the jurisdictional hearing.
On November 6, 2017, in the parallel criminal proceedings, both parents entered pleas of guilty to child endangerment and negligence charges, wherein probationary terms were imposed. The parents subsequently returned to Miami-Dade County and received probationary transfers under the Interstate Compact for Adult Offender Supervision.[3]
On January 5, 2018, the California court convened a status conference in the temporary emergency proceedings. The court was informed that the paternal grandmother, residing in Florida, was willing to foster the child. On January 12, 2018, the child was adjudicated dependent, and the court ordered the Los Angeles County Department of Children and Family Services "to contact its counterpart in the State of Florida" in order to facilitate an executive transfer.
On March 29, 2018, the Florida trial court rendered a written order, accepting the transfer of jurisdiction of the California case. The child was returned to Florida and placed in the care of his paternal grandmother. The mother subsequently relocated to Michigan and ceased contact with the child. On November 28, 2018, following a lengthy adjudicatory hearing, the mother's parental rights were terminated.[4] This appeal ensued.
STANDARD OF REVIEW
"Whether a court has subject matter jurisdiction pursuant to the UCCJEA is a question of law reviewed de novo." McAbee v. McAbee, 259 So. 3d 134, 139 (Fla. 4th DCA 2018) (citing In re D.N.H.W., 955 So. 2d 1236, 1238 (Fla. 2d DCA 2007) ).
ANALYSIS
The mother contends that Florida did "not have [subject matter] jurisdiction to terminate [her] parental rights." "Subject matter jurisdiction-the 'power of the trial court to deal with a class of cases to which a particular case belongs'-is conferred upon a court by constitution or by statute." Strommen v. Strommen, 927 So. 2d 176, 179 (Fla. 2d DCA 2006) (quoting Cunningham v. Standard Guar. Ins. Co., 630 So. 2d 179, 181 (Fla. 1994) ). The term jurisdiction must be used precisely and only when apposite:
"Jurisdiction" refers to "a court's adjudicatory authority." Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 915, 157 L.Ed. 2d 867 (2004). Accordingly, the term "jurisdictional" properly applies only to "prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)" implicating that authority. Id.; see also Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L.Ed. 2d 210 (1998) ("subject-matter jurisdiction" refers to "the courts' statutory or constitutional power to adjudicate the case") (citation omitted) (emphasis in original); Landgraf v. USI Film Prods., 511 U.S. 244, 274, 114 S. Ct. 1483, 1503, 128 L.Ed. 2d 229 (1994)
*1167 ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.' ") (quoting Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 100, 113 S. Ct. 554, 565, 121 L.Ed. 2d 474 (1992) (Thomas, J., concurring)) ... [W]e have encouraged federal courts and litigants to "facilitate[e]" clarity by using the term "jurisdictional" only when it is apposite. Kontrick, 540 U.S. at 455, 124 S. Ct. at 915.
Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160-61, 130 S. Ct. 1237, 1243-44, 176 L.Ed. 2d 18 (2010) (last alteration in original). The circuit courts of Florida are "superior courts of general jurisdiction, and nothing is intended to be out of the jurisdiction of a superior court, except that which specially appears so to be." Curtis v. Albritton, 101 Fla. 853, 861, 132 So. 677, 681 (1931) (citation omitted); see Art. V, § 5(b), Fla. Const.; § 26.012, Fla. Stat. (2018). More precisely,
The Circuit courts of the State of Florida are courts of general jurisdiction-similar to the Court of King's Bench in England-clothed with most generous powers under the Constitution, which are beyond the competency of the legislature to curtail. Ex Parte Henderson, 6 Fla. 279, 279-80 (1855) ; Lamb v. State, 91 Fla. 396, 401, 107 So. 535, 537 (1926). They are superior courts of general jurisdiction, subject of course to the appellate and supervisory powers vested in the Supreme Court by the Constitution, and as a general rule it might be said that nothing is outside the jurisdiction of a superior court of general jurisdiction except that which is clearly vested in other courts or tribunals, or is clearly out side of and beyond the jurisdiction vested in such circuit courts by the Constitution and the statutes enacted pursuant thereto. Chapman v. Reddick, 41 Fla. 120, 132, 25 So. 673, 676 (1899) ; Curtis, 101 Fla. at 861-62, 132 So. at 681.
S. Records and Tape Serv. v. Goldman, 458 So. 2d 325, 326-27 (Fla. 3d DCA 1984) (quoting State ex rel. B.F. Goodrich Co. v. Trammell, 140 Fla. 500, 504, 192 So. 175, 177 (1939) ).
A court's exercise of subject matter jurisdiction over interstate child custody disputes is guided by the UCCJEA, a uniform law that has been adopted in some iteration by all states, with the exception of Massachusetts. Leigh R. Shinohara, Foreign Judgments, in Florida Proceedings After Dissolution of Marriage 9-1 (13th ed., The Florida Bar 2017). The UCCJEA strives "to avoid jurisdictional competition between states or countries, promote interstate cooperation, avoid relitigation of another state's or country's custody decisions[,] and facilitate enforcement of another state's or country's custody decrees." In re Gloria A., 213 Cal.App.4th 476, 152 Cal. Rptr. 3d 550, 555 (2013) (citation omitted); see § 61.502, Fla. Stat. (2018).
Pursuant to the initial child custody jurisdiction provision of the UCCJEA, codified in section 61.514, Florida Statutes (2018), the child's "home state" is unequivocally granted priority to exercise jurisdiction to determine initial custody matters, except in temporary emergency situations when the child is present in another state. Arjona v. Torres, 941 So. 2d 451, 454 (Fla. 3d DCA 2006). "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least [six-]consecutive months immediately before the commencement of a child custody proceeding." § 61.503(7), Fla. Stat (2018).[5] In computing the requisite six-month period, "[a] temporary absence of [a *1168 parent or person acting as a parent] is part of the period." Id. Moreover, "[t]he state with home state jurisdiction over the child has [jurisdictional] priority under the UCCJEA." Baker v. Tunney, 201 So. 3d 1235, 1237 (Fla. 5th DCA 2016) (citation omitted); see also § 61.514, Fla. Stat. (2018).
In the instant case, prior to traveling to California, the child lived with his parents for more than six-consecutive months in Florida. Thus, under the UCCJEA, Florida was his home state and retained "jurisdictional priority" over any other state. Karam v. Karam, 6 So. 3d 87, 90 (Fla. 3d DCA 2009) ("Under the UCCJEA, jurisdictional priority lies in the child's home state.") (citation omitted).
As previously referenced, as an exception to the exercise of general "home state" jurisdiction, the UCCJEA further provides for the exercise of "temporary emergency jurisdiction if the child is present in [the] state and the child has been abandoned[6] or it is necessary in an emergency to protect the child because the child ... is subjected to[,] or threatened with[,] mistreatment or abuse." § 61.517(1), Fla. Stat. (2018) ; see Cal. Fam. Code § 3424(a) (2018); see also In re A.M., 224 Cal.App.4th 593, 168 Cal. Rptr. 3d 494, 498 (2014) ; Steckler, 921 So. 2d at 743-44. California courts have further interpreted the statutory language, and found "[a]n 'emergency' exists when there is an immediate risk of danger to the child if he or she is returned to a parent." In re A.M., 168 Cal. Rptr. 3d at 498 (citation omitted). Here, as the child was abandoned by his parents in California, it is indisputable that California permissibly invoked temporary emergency jurisdiction under the UCCJEA.
Nonetheless, the mother contends that Florida, thereafter, improperly exercised jurisdiction, as in the absence of a formal termination of the California proceedings, the California case remained concurrently active. See § 61.519(1), Fla. Stat. (2018) ("[A] court of [Florida] may not exercise its [home state] jurisdiction ... [if] a proceeding concerning the custody of the child had been commenced in a court of another state [properly exercising] jurisdiction ... unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under s. 61.520."). We agree that, under the broad statutory definition promulgated in section 61.503(4), Florida Statutes (2018), the temporary emergency proceeding constituted an earlier-initiated child custody proceeding.[7] Nevertheless, California's act of transferring the case necessarily evidenced a declination to further exercise temporary jurisdiction, and the ensuing acceptance of transfer by Florida entailed a de facto, contemporaneous termination of the temporary proceedings. See e.g., In re Am. President Lines, Ltd., 929 F.2d 226 (6th Cir. 1991) (discussing that a transfer of a case divests the originating court of further jurisdiction); Transfer , The American Heritage Dictionary (5th ed. 2019) (defining "transfer" as the action "to convey or cause to pass from one place, person, or thing to another.").
*1169 Moreover, as the purpose of a temporary order under emergency jurisdiction "is to protect the child until the [s]tate that has jurisdiction [as the 'home state'] enters an order," a vast body of jurisprudence dictates that emergency jurisdiction is intended to be impermanent and transient. UCCJEA § 204 comment (1997); see § 61.517(2), Fla. Stat. (2018) ; see, e.g., In re Gino C., 224 Cal.App.4th 959, 169 Cal. Rptr. 3d 193, 198 (2014) ("Emergency jurisdiction [can] be exercised to protect a child only on a temporary basis until the court with appropriate jurisdiction issue[s] a permanent order.") (citation omitted). Therefore, "[i]f there is no previous child custody determination that is entitled to be enforced ... and a child custody proceeding has not been commenced [in the 'home state']," then temporary emergency jurisdiction only lasts "until an order is obtained from a court of a state having jurisdiction [as the home state of the child]." § 61.517(2), Fla. Stat. (2018) ; Cal. Fam. Code § 3424(b) (2018); see also In re Gino C., 169 Cal. Rptr. 3d at 198 ("[T]he UCCJEA provides for 'temporary emergency jurisdiction, that can ripen into continuing jurisdiction only if no other state with grounds for continuing jurisdiction can be found or, if one is found, that state declines to take jurisdiction .' ") (citation omitted) (emphasis in original). Here, by exercising jurisdiction, following California's temporary emergency exercise of jurisdiction, Florida fulfilled the purpose and intent of the UCCJEA, as it remained the state endowed with home state jurisdictional priority.
Finally, the mother asserts that California procedurally erred in relinquishing jurisdiction,[8] effectively depriving her of her right to procedural due process and divesting the Florida court of jurisdiction.[9] Subject matter "jurisdiction does not depend on procedural rules." Dougherty v. Dep't of Labor & Indus., 150 Wash.2d 310, 76 P.3d 1183, 1185 (2003) (citation omitted). "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction." Robert J. Martineau, Subject Matter Jurisdiction as New Issue on Appeal: Reining in an Unruly Horse, 1988 BYU L. Rev. 1, 28. Thus, any failure by the California court to adhere to procedural requirements, as alleged, is not within the purview of our review. See Krebs v. Krebs, 183 Md.App. 102, 960 A.2d 637, 643 (2008) (Appellant "makes her argument in the wrong court ... if [she] was aggrieved by [the sister] court's declination of jurisdiction, the appropriate review would be in *1170 the appellate courts [of the sister court's jurisdiction] ... our conclusion is also consistent with other decisions applying the UCCJEA ...") (citing Ramsey v. Ramsey, 995 So. 2d 881 (Ala. Civ. App. 2008) ; Cole v. Cushman, 946 A.2d 430 (Me. 2008) ; Fickinger v. Fickinger, 342 Mont. 552, 182 P.3d 763 (2008) ; Griffith v. Tressel, 394 N.J.Super. 128, 925 A.2d 702 (App. Div. 2007) ; Horgan v. Romans, 366 Ill.App.3d 180, 303 Ill.Dec. 311, 851 N.E.2d 209 (2006) ; Shanoski v. Miller, 780 A.2d 275 (Me. 2001) ).
CONCLUSION
As California exclusively exercised temporary emergency jurisdiction, and Florida remained the child's home state, the exercise of jurisdiction by the lower tribunal, following the court-ordered transfer and subsequent acceptance of the case, was in substantial conformity with the requirements of the UCCJEA.[10] Accordingly, we affirm the final judgment under review.
Affirmed.

In 2002, the Florida Legislature adopted provisions of the UCCJEA, as codified in section 61.501 et seq., Florida Statutes (2018). See Steckler v. Steckler, 921 So. 2d 740, 742 (Fla. 5th DCA 2006). California's adopted version of the UCCJEA is codified in section, 400 et seq., California Family Code (2018).

See Cal. Fam. Code § 3424(a) (2018).

See § 949.07, Fla. Stat. (2018).

The trial court terminated the parental rights of both parents, however, only the mother has appealed.

Section 3402(g), California Family Code (2018), contains an identical definition.

The UCCJEA defines "abandoned" as "left without provision for reasonable and necessary care or supervision." § 61.503(1), Fla. Stat. (2018) ; Cal. Fam. Code § 3402(a) (2018).

Section 61.503(4), Florida Statutes (2018), defines "[c]hild custody proceeding" as "a proceeding in which legal custody ... with respect to a child is an issue. The term includes a proceeding for ... abuse, dependency, guardianship ... in which the issue may appear."

The mother also asserts the Florida court procedurally erred in accepting jurisdiction; however, we find no merit to this claim. First, the mother conflates the statutory burdens encumbering a court declining to exercise jurisdiction with the duty of a home state to accept transfer absent a reasoned determination that it is an inconvenient forum. See § 61.520(2), Fla. Stat. (2018). Second, it is axiomatic that the Florida court acquired personal jurisdiction over the mother, as she appeared during the Florida proceedings and stipulated to the entry of a case plan. See C.J.L-M. v. Dep't Children & Families, 248 So. 3d 1184, 1185 (Fla. 4th DCA 2018) (holding "the mother's personal appearance at the shelter hearing obviated the need for service of process [of a subsequently filed dependency petition]") (citation omitted).

We note the mother's arguments are incongruous, as she first contends that California continued to exercise jurisdiction, and then asserts that California improperly relinquished its continuing jurisdiction. These arguments do not represent arguments in the alternative based on varying interpretations of the law, but rather constitute contradictory presentations of the facts that leave us to grapple with the record "in an effort to ferret out the dispositive issues." Auto World Body & Paint, Inc. v. Sun Elec. Corp., 471 So. 2d 212, 213 (Fla. 1st DCA 1985).

"Were we to undertake a review of the [California] court's decision to decline jurisdiction ... we would produce a jurisdictional conflict in this [termination of parental rights case] that the UCCJEA was intended to eliminate." Krebs, 960 A.2d at 646.