CASANUEVA, Judge.
James H. Johnson, III (Col.Johnson), appeals the trial court’s order dismissing his petition for dissolution of marriage after a telephonic hearing in consultation with two courts of a foreign jurisdiction — a New York family court and a New York supreme court — as authorized by section 61.519, Florida Statutes (2010). The petition sought not only to dissolve his twenty-three-year marriage to Kristina Johnson but also to establish custody and visitation rights to the parties’ minor son. We reverse.
I. Background
As of November 2010, Col. Johnson was a long-time member of the United States Army, stationed as base commander in Vicenza, Italy. Mrs. Johnson and their son lived with him on the base.[1] On November 6, 2010, while Col. Johnson was on deployment to Afghanistan, Mrs. Johnson left Italy with their fourteen-year-old son and flew to New York state. On November 10, 2010, she instituted an action for custody of the son unconnected to dissolution in the New York family court (the New York custody action).[2] On December 14, 2010, Col. Johnson filed the underlying dissolution action in Sarasota County (the Florida action) which included a request for a parenting plan. On December 16, 2010, Mrs. Johnson commenced a dissolution of marriage action in the New York supreme court in which she also sought custody of the child (the New York dissolution action).
Along with his petition for dissolution, Col. Johnson complied with the requirements of Florida’s Uniform Child Custody, Jurisdiction, and Enforcement Act (UC-CJEA)[3] by filing the required affidavit. This affidavit indicated that for the preced *337 ing five years, the son had lived in Florida except for temporary residences in various cities outside of Florida for those same five years occasioned by the colonel’s military service. Thus Col. Johnson asserted what he termed “vacuum jurisdiction” or default jurisdiction that allowed the Florida court to assert jurisdiction over the son.[4] Mrs. Johnson moved to dismiss the Florida petition for lack of jurisdiction or for forum non conveniens, asserting that Col. Johnson’s allegations of residency were untrue, that she was at all times a citizen of New York, and that the New York family court had jurisdiction over the son by virtue of her November 10, 2010, petition. This record does not indicate that Col. Johnson was served with a summons in either New York action.[5]
Pursuant to section 61.511(2),[6] and section 61.519,[7] Col. Johnson moved for a *338 hearing involving the two New York courts by telephone and an opportunity to be heard and to present evidence and legal argument. The trial court held this hearing on February 17, 2011, in conjunction with the two New York courts by telephone during which the three courts concurred that it was appropriate to allow the New York state courts to exercise jurisdiction over all the proceedings. Col. Johnson had timely requested to also be present telephonically to testify but, when he called in, he was not put through to the hearing. Based upon legal argument regarding jurisdiction over the child, but no presentation of evidence, the trial court dismissed Col. Johnson’s Florida petition for dissolution. Col. Johnson’s counsel objected, stating that the hearing was only pursuant to section 61.519 to determine the child’s home state and substantial compliance with the UCCJEA and was not a hearing on Mrs. Johnson’s motion to dismiss Col. Johnson’s petition. The trial court overruled counsel’s objection.
II. Analysis
We turn first to the “[ijnitial child custody jurisdiction” issue as outlined in section 61.514. We will undertake a separate analysis of the trial court’s dismissal of the colonel’s petition for dissolution of marriage.
A. The UCCJEA Hearing To Determine Jurisdiction Over the Child
Col. Johnson’s petition for dissolution of marriage requested a parenting plan. Mrs. Johnson’s motion to dismiss put the Florida court’s jurisdiction over their child at issue. Thus, the first determination the trial court had to make was whether Florida had jurisdiction over the child pursuant to the UCCJEA. See § 61.508.[8] The child’s “home state” determines jurisdiction over the child. Section 61.503(7) defines “home state” as “the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding.” But the record conclusively shows that at the commencement of these proceedings — either Mrs. Johnson’s commencing the New York custody action on November 10, 2010, or Col. Johnson’s commencing the Florida action on December 14, 2010 — their son had lived in neither state for the requisite previous six months. Col. Johnson expeditiously moved the case forward by requesting the trial court to hold a conference with the New York courts. Col. Johnson also invoked his right to appear and give evidence at this hearing pursuant to section 61.511(2).
Once the trial court undertook to communicate by telephone with the two New York courts, the trial court was required to allow Col. Johnson to participate under section 61.511(2) which provides that the court “shall allow the parties to participate in the communication [and] [i]f the parties elect to participate ..., they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.” We construe the words “shall” and “must” in this provision to impose a mandatory duty upon the trial court that must be performed before ruling. See K.I. v. Dep’t of Children & Families, 70 So.3d 749, 753-54 (Fla. 4th DCA 2011) (“Where a court’s decision on whether to allow a sister state to exercise jurisdiction is ‘based, in whole or in part, upon *339 conversations the judge has with the judge of a sister state, then the court must allow the parties to be present during the conversation and set forth specific findings regarding the basis for concluding that jurisdiction in a sister state is appropriate.’ Poliandro v. Springer, 899 So.2d 441, 444 (Fla. 4th DCA 2005) (emphasis in original)[.]”). Section 61.511(2) operates as a due process provision.
The trial court had no facts upon which to base its conclusion that the New York family court was the proper forum for the child custody determination because it heard no sworn testimony, only legal argument. It further failed to set forth specific findings to support its conclusion that New York was the home state. Because this record establishes that these statutory requirements were not properly met, Col. Johnson was denied due process. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (stating “that at a minimum [the words of the Due Process Clause of the Fourteenth Amendment] require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case”); Masiello v. Masiello, 850 So.2d 650 (Fla. 2d DCA 2003) (holding that it was error for the trial court to proceed to a hearing on a particular issue without proper notice to the husband that that particular issue was to be determined at the noticed hearing); Busch v. Busch, 762 So.2d 1010 (Fla. 2d DCA 2000) (holding that upon noticing a hearing on the husband’s motion for emergency relief seeking an injunction to keep the wife out of marital home and where the motion did not mention the issue of child custody, it was error for the trial court to change primary custody of the children to the husband at the hearing). A new UCCJEA hearing to determine the Johnsons’ child’s home state is required wherein Col. Johnson shall be allowed to appear — and Mrs. Johnson too, should she so wish — to give evidence. See K.I., 70 So.3d at 754 (reversing and remanding for a ruling on whether jurisdiction in Florida was proper after due notice to the mother, the father, and the Virginia court and based on factual findings).
We cannot conclude that the violation of Col. Johnson’s due process rights under section 61.511(2) was harmless.[9]
B. The Dismissal of the Petition for Dissolution of Marriage
Col. Johnson petitioned for dissolution and requested a parenting plan. Because of the simultaneous proceedings in New York, he also initiated the telephonic hearing under section 61.519 to determine whether Florida or New York should have jurisdiction over his son. The record in this case established that Mrs. Johnson’s motion to dismiss was never noticed for hearing nor was ever heard. Either the trial court overlooked the fact that the hearing with the two New York courts had not been noticed to also hear Mrs. *340 Johnson’s motion to dismiss the colonel’s dissolution petition, or the trial court misconstrued the reach of the UCCJEA to encompass dissolution of marriage proceedings. Child custody jurisdiction is a separate determination from dissolution of marriage jurisdiction. See Ray v. Pentlicki 375 So.2d 875, 877 (Fla. 2d DCA 1979) (stating that a Uniform Reciprocal Enforcement of Support Act [predecessor statute to the UCCJEA] proceeding was maintainable as a separate action even in the same court where a modification of a prior dissolution action relative to child support was proceeding, although it was desirable to consolidate the two to avoid opposite outcomes). A dissolution action can, and usually does, subsume a child custody determination but the reverse does not hold true. See § 61.520(4) (providing that “[a] court of this state may decline to exercise its jurisdiction under this part if a child custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceedings”).
After the trial court determined at the hearing with the New York courts that New York should have jurisdiction over the parties’ son, the trial court also dismissed Col. Johnson’s petition for dissolution of his marriage without notice to Col. Johnson and an opportunity to be heard on Mrs. Johnson’s motion to dismiss. The trial court’s dismissal further denied Col. Johnson due process in this regard.
[T]he constitutional guarantee of due process requires that each litigant be given a full and fair opportunity to be heard. The right to be heard at an evidentiary hearing includes more than simply being allowed to be present and to speak. Instead, the right to be heard includes the right to introduce evidence at a meaningful time and in a meaningful manner. It also includes the opportunity to cross-examine witnesses and to be heard on questions of law. The violation of a litigant’s due process right to be heard requires reversal.
Vollmer v. Key Dev. Props., Inc., 966 So.2d 1022, 1027 (Fla. 2d DCA 2007) (internal citations and quotation marks omitted).
III. Conclusion
We reverse the order dismissing Col. Johnson’s petition for dissolution of marriage and remand for new proceedings undertaken in compliance with the UCCJEA and due process. It will be necessary for the trial court to allow the parties to present evidence to determine whether the evidence warrants a conclusion that “vacuum jurisdiction” over the minor child rests with the Florida court and whether the New York court was in substantial compliance with the UCCJEA at the time Mrs. Johnson commenced proceedings there. We note that, as time has passed, their son is likely well established in a high school and with a social life in the state of New York. This is a reality that the trial court will need to consider on remand as well as the similar circumstances outlined in Hindle v. Fuith, 33 So.3d 782 (Fla. 5th DCA 2010).
Reversed and remanded for further proceedings in accordance with this opinion.[10]
KELLY and MORRIS, JJ., Concur.

.Throughout their marriage, the couple had always lived in military housing, but Col. Johnson declared Florida as his domicile, using his parents' address in Sarasota County and filing his federal income taxes as a Florida resident.

.Mrs. Johnson filed her petition as a proceeding under part 3 (custody) of article 6 (Permanent Termination of Parental Rights, Adoption, Guardianship And Custody) of New York's Family Court Act. N.Y. Family Law §§ 651-56 (McKinney 2010).

. Col. Johnson later amended the jurisdictional language in his petition for dissolution of marriage to add: "Alternatively, because of the military assignment of Colonel Johnson to the United States Army base in Vicenza, Italy, since July of 2008, Italy should be considered the state of habitual residence of the minor child." Col. Johnson then instituted an interlocutory federal proceeding under the "Convention on the Civil Aspects of International Child Abduction, done at the Hague on 25 Oct. [19]80 (the "Hague Convention”) and its implementing statutes, the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et. seq. (ICARA).” Pursuant to the federal proceeding, Col. Johnson sought to have his son returned to him at the base in Vicenza, Italy, because he alleged Italy to be his son’s habitual residence. During the pendency of these proceedings, the Florida and New York actions were stayed until the federal proceeding was concluded by a finding that the son’s habitual residence was not in Italy. See Johnson v. Johnson, No. 11 Civ. 37(RMB), 2011 WL 569876 at *6 (S.D.N.Y. Feb. 10, 2011). The federal district court then dismissed Col. Johnson's petition. Then the actions in Florida and New York resumed.

. However, subsequent to the notice of appeal that Col. Johnson filed in this case, the parties have been negotiating a settlement agreement in the New York actions. We are unaware of the final disposition of the New York proceedings as of the writing of this opinion.

. Section 61.511, Fla. Stat. (2010), provides: Communication between courts.—
(1) A court of this state may communicate with a court in another state concerning a proceeding arising under this part.
(2) The court shall allow the parties to participate in the communication. If the parties elect to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
(3) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.
(4) Except as otherwise provided in subsection (3), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.
(5) For purposes of this section, the term "record” means a form of information, including, but not limited to, an electronic recording or transcription by a court reporter which creates a verbatim memoriali-zation of any communication between two or more individuals or entities.

.Section 61.519(2) provides:
Simultaneous proceedings.—
(2) Except as otherwise provided in s.61.517 [temporary emergency jurisdiction], a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to s.61.522. If the court determines that a child custody proceeding was previously commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this part does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.

. Section 61.508 provides:
Priority. — If a question of existence or exercise of jurisdiction under this part is raised in a child custody proceeding, the question, upon request of a party, must be given priority on the calendar and handled expeditiously.

. Aside from the due process violation requiring reversal, we note, based merely on allegations of counsel, that the Florida and New York courts may have reached the correct conclusion as to which had jurisdiction over the parties’ son. In Hindle v. Fuith, 33 So.3d 782 (Fla. 5th DCA 2010), the appellate court reviewed a final judgment of paternity in which the trial court had determined, inter alia, that Florida courts had jurisdiction over the parties’ minor daughter. The trial court took jurisdiction over the child there because it had found that no other state had jurisdiction; the mother and the child had lived in several other states for the six months prior to their arrival in Florida where the mother filed the action to establish paternity, custody, and child support. Id. at 785. The Fifth District affirmed that part of the final judgment finding that jurisdiction over the child was properly in the Florida court. Id. at 787.

. The parties' suggestion that they are negotiating a settlement raises a fervent hope in *341 this court that they will reach an accord so as to obviate the need for the trial court to hold further proceedings that are required to protect Col. Johnson’s due process rights.