DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HOMER McABEE, III,**
Appellant,

v.

**ALICIA MARIE McABEE,**
Appellee.

No. 4D17-3450

[December 12, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael G. Kaplan, Judge; L.T. Case No. DVCE 17-004334.

Michael M. Giel of Giel Family Law, P.A. and Kyle A. Bedran of Bedran Law, Jacksonville, for appellant.

Jonathan Z. Schiller of Brinkley Morgan, Fort Lauderdale, for appellee.

FORST, J.

Homer McAbee, III ("the father") appeals from the trial court's final judgment of injunction to protect the parties' minor child from domestic violence. Pursuant to the final judgment, the trial court terminated the father's contact with the child for the rest of her minority.

The parties do not dispute, and we agree, that the trial court properly exercised its temporary emergency jurisdiction over the child under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[1] However, what we have here is a failure to communicate, as the Florida trial court failed to consult with the Virginia court—where custody proceedings had been ongoing for years, and which had made a custody determination just two months earlier—before making its own custody determination, in violation of a mandatory directive of the UCCJEA. The trial court's failure to communicate with the Virginia court before making a custody determination requires that we remand for further proceedings.

---

[1] Section 61.517, Fla. Stat. (2017).

## Background

A full recitation of the facts is necessary to demonstrate the purpose of the UCCJEA and why its communication requirement is vital.

The father and Alicia Marie McAbee ("the mother") married in South Carolina in 2007, and divorced in Virginia in 2015. They have one daughter ("the child"), born in 2009.

At issue are the mother's allegations that the father sexually abused the child—at age 3 in Virginia, and age 6 in Florida. The mother first alleged the sexual abuse in 2012, around the time the parties separated. At that time, the father admitted to sexually abusing the child in graphic detail in letters to the mother and journal entries (collectively, "the father's writings"). The father also documented having a "sex addiction." The father later denied the sexual abuse, claiming he falsely admitted to it only after the mother's interrogations and threats. He further claimed the sex addiction was a reaction to medication he was taking at the time.

The mother filed for custody in Virginia in 2013. The father underwent psychological and sexual addiction evaluations, and the parties received counseling from a psychologist. The psychologist concluded the father was no threat to the child and recommended contact.

The father moved to Jacksonville, Florida in January 2014, and filed for divorce in Virginia that April. The mother and child moved to Orlando (Orange County, Florida) in May 2014, where they remained until August 2016.

The Virginia court heard the father's motion for visitation in July 2014. The mother had refused him contact with the child for 575 days. She objected to visitation based on the father's writings, in which he described violent, forcible abuse on the child, including penetration. The father testified about the mother's interrogations and threats that, unless he admitted everything she accused him of, he would go to jail, lose his job and never see his daughter again. The Virginia court also heard from the father's psychologist and sexual disorder specialist. The mother argued the father's writings proved abuse, but the judge noted that the allegation of abuse "wasn't corroborated" by either the interviews conducted by Child Protective Services, or the child's examination by a sexual assault nurse examiner ("SANE" nurse). The Virginia court granted the father supervised visitation.

Two months later, the mother petitioned for relief in Orange County,

2

Florida. The Orange County court conferred with Virginia pursuant to the UCCJEA and dismissed the proceedings for lack of jurisdiction.

In early 2015, after an evidentiary hearing on the abuse claims and the father's writings—which included testimony of the father's neuropsychologist and a videotaped portion of the mother's "interrogation" of the father—the Virginia court concluded that no sexual abuse had occurred. Accordingly, in April 2015, the Virginia court entered a custody order giving graduated visitation to the father. Specifically, after four supervised visits, upon the written recommendation of the court-appointed doctor, the father would have visitation every other weekend. If necessary (i.e., absent the parties' agreement), the court would consider further extending the father's visitation after August 2015.

The mother filed more Florida petitions in October 2015. She again relied on the father's writings, but added claims that he had abused the child in Florida in 2015. The Orange County court denied the petitions, noting its previous dismissal for lack of jurisdiction, and stating that time-sharing issues should be addressed in the parties' Virginia divorce proceeding.

The following month, the Virginia court was to hear the appropriateness of extending the father's visitation, as referenced in its April 2015 order, and the father's motion for emergency transfer of custody. After the hearing, the court entered its final order of divorce. The order provided that the April 2015 custody order "remains in effect" and, because of the mother's Florida filings, reserved for later determination the father's transfer of custody motion.

In March 2016, the Orange County court again declared that it lacked jurisdiction, and that Virginia retained it. Several months later, at a UCCJEA hearing to address the mother's action to register the Virginia divorce decree, the Orange County court ruled, yet again, that Virginia retained jurisdiction over modification. After that hearing, the mother fled to South Carolina with the child, without notice to the father or the court. The record reflects that the mother and child lived in South Carolina from August 2016 to April 2017.

The Virginia court entered an April 2, 2017 order on the father's amended emergency motion to transfer custody. The order awarded the father sole physical and legal custody of the child, effective immediately, based on the following findings:

- the initial supervised visitation was done pursuant to the

3

court's April 2015 custody order, and the child's therapist supported increased visitation;

- the April 2015 order provided for review of visitation after August 2015;
- the review had not occurred but was reserved, along with the father's emergency motion, in the November 2015 order and both were properly before the court for determination on the merits;
- related proceedings occurred in Orange County, Florida—however, after the Virginia and Florida courts conferred regarding jurisdiction, Florida deferred to Virginia which retained jurisdiction over custody;
- the mother violated the April 2015 custody order as perpetuated by the November 2015 divorce decree by removing the child from Florida and secreting her elsewhere (South Carolina) without notice or communication to the court or to the father, and denied the father access to the child as required by the court's orders, and;
- the mother was personally served with timely notice of the subject hearing.

Based on these findings, the Virginia court held that the mother's "unjustifiable conduct in removing [the child], secreting her, and denying the Father visitation violates [the child's] best interests and the orders of this Court . . . ." It thus ordered that the child have no contact with the mother pending further ruling.

The mother did not appeal the April 2017 Virginia order. Instead, in May 2017, she sought a protective order in South Carolina. The South Carolina court denied the petition, finding "the VA order controls" and that "[o]rders presented this date clearly show that UCCJEA conferences have been held and that VA continues to retain jurisdiction . . . ."

On June 2, 2017, the mother filed the underlying Broward County petition, again alleging the father had sexually abused the child and referencing some of his writings. The mother further alleged that the father "has somehow, without notice to me gone to a VA court," without telling the Virginia court "about the open Family court case in Orlando." She attached to her petition a stale shelter order from the Orange County dependency proceedings. The trial court granted a temporary injunction and set a hearing. The father successfully moved to vacate the temporary injunction, and on June 13, 2017, the court ordered the mother to return

the child by noon that day.  The mother did not return the child, however, and approximately fifteen minutes before the noon deadline, a maternal relative brought the child to a local police department where the child reported for the first time to a law enforcement officer that her father had sexually abused her.

The father moved to dismiss the Broward County petition, arguing res judicata among other things.  The father also requested that the court take judicial notice of the previous Virginia, South Carolina and Orange County, Florida orders.  At the start of the three-day hearing, the court denied the motion to dismiss and addressed the mother's notice of intent to offer child hearsay statements—including the child's recent, first-time disclosures to a police officer and 2013 and 2015 statements to her godmother.  After the police officer, the godmother and both parties testified, the court ruled the child hearsay was admissible, and found "it really incredulous to believe that [the father] could be forced under any circumstances to make these statements where he acknowledges abusing his daughter, and with the specifics that he did and the manner that he did."  The trial court then entered its final judgment of injunction—effective until March 2, 2027—finding the child "is the victim of domestic violence or has reasonable cause to believe that [she] is in imminent danger of becoming a victim of domestic violence" by the father.  The trial court also ordered that the child have no contact with the father.

In seeking rehearing, the father argued res judicata and improper admission of child hearsay.  For the first time, he also argued the trial court was required to communicate with the Virginia court under the temporary emergency jurisdiction statute and collateral estoppel.  The trial court denied rehearing and this appeal followed.

It is undisputed that the parties and child have not lived in Virginia since 2014, and that Florida was not the child's "home state" at the time of the proceedings below, with the mother and the child having just returned to the state only a week or so before the mother filed her petition.[2]  The issue we address on appeal is whether the Seventeenth Circuit (FL) trial court should have conferred with the Virginia court before making a custody determination.

---

[2] Home state is defined as "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. . . .  A period of temporary absence of any of the mentioned persons is part of the period."  § 61.503(7), Fla. Stat. (2017).

**Analysis**

The father argues the trial court erred by not immediately contacting the Virginia court upon learning of its custody orders, in violation of the UCCJEA. We agree and remand for further proceedings.

"The UCCJEA is a jurisdictional act that governs subject matter jurisdiction over child custody matters." *M.A.C. v. M.D.H.*, 88 So. 3d 1050, 1053 (Fla. 2d DCA 2012). Whether a court has subject matter jurisdiction pursuant to the UCCJEA is a question of law reviewed de novo. *In re D.N.H.W.*, 955 So. 2d 1236, 1238 (Fla. 2d DCA 2007).

The UCCJEA provides for temporary emergency jurisdiction over child custody "if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." § 61.517(1), Fla. Stat. (2017). Here, the parties do not dispute that the child was physically present in Florida when the mother filed the underlying petition alleging sexual abuse. Thus, we agree that the trial court had emergency temporary jurisdiction over the matter.

However, the UCCJEA also provides that

> [a] court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under ss. 61.514–61.516, <u>shall immediately communicate with the other court</u>. . . .

§ 61.517(4), Fla. Stat. (emphasis added).

"'Child custody proceeding' means a proceeding in which legal custody, physical custody, . . . or visitation with respect to a child is an issue," and "includes a proceeding for divorce, separation, . . . abuse, . . . and protection from domestic violence, in which the issue may appear." § 61.503(4), Fla. Stat. "'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, residential care, or visitation with respect to a child. The term includes a permanent, temporary, initial, [and/or] modification order." § 61.503(3), Fla. Stat. Here, it cannot be disputed that a child custody proceeding had commenced in Virginia (as early as 2013), and that a custody determination had been made by a Virginia court—most recently,

6

in April of 2017.

At the hearing below, the trial court acknowledged it "ha[d] seen the orders from Virginia." However, the record provides no evidence that the court ever communicated with the Virginia court—much less, that it had "immediately communicate[d]" with the Virginia court, as required by section 61.517(4).[3]

Mandatory words impose a duty. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112 (2012). In *S.R. v. State*, 346 So. 2d 1018 (Fla. 1977), the word "shall" was held to be mandatory in a statute stating a "petition alleging delinquency shall be dismissed with prejudice" if it was untimely filed, even though the implementing rule of juvenile procedure provided the petition "may" be dismissed. *Id.* at 1019. The court stated that whether "shall" is mandatory "depends upon the context in which it is found and upon the intent of the legislature as expressed in the statute." *Id.* Section 61.517(4), Fla. Stat. provides no indication that the legislature intended to give the Florida trial courts discretion whether to contact the sister court before holding a hearing and rendering a decision. "[S]hall immediately communicate" is a mandatory directive.

The statute ensures that the court exercising temporary emergency jurisdiction—which has only a snapshot of information pertinent to the custody determination—obtains the knowledge of the other court to make the best decision possible for the child. Such knowledge is especially important in a case such as this that has involved a years-long contentious custody dispute, heinous allegations of abuse, and the exact opposite custody determination from the other court just two months prior.

The appropriate remedy for the trial court's failure to immediately communicate with the Virginia court is to remand this matter for the Seventeenth Judicial Circuit Court to contact the Virginia court pursuant to section 61.517(4). This course of action is supported by precedent from the Fifth District Court of Appeal. *See Earney v. Quiloan*, 206 So. 3d 147, 150 (Fla. 5th DCA 2016) ("[B]ecause the trial court failed to satisfy the contact requirement imposed by section 61.517(4), we remand with instructions that the Florida court contact the Texas court to resolve any conflicts that exist between the Texas divorce decree and the Florida order suspending timesharing."); *Steckler v. Steckler*, 921 So. 2d 740, 745 (Fla.

---

[3] To the extent any contact was made with the Virginia court, the Florida trial court failed to make a record and inform the parties of the communication, as required by section 61.511(4), Fla. Stat. (2017).

5th DCA 2006) (affirming trial court's temporary emergency jurisdiction determination, but remanding for contact with the out-of-state court).

## Conclusion

The record lacks any indication that the trial court followed the requirements of section 61.517(4), which mandated that the court communicate with the Virginia court as part of its exercise of temporary emergency jurisdiction. Accordingly, we remand this matter for compliance with the statute. *See Steckler*, 921 So. 2d at 745. Because the remand proceedings may require the trial court to revisit its rulings made before final judgment, we do not consider the points raised on appeal as to those issues. Custody of the minor child shall remain with the mother pending the court's compliance with section 61.517(4), and any order directing a change in custody.

*Affirmed in part, and remanded with instructions.*

GERBER, C.J., and WARNER, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***