DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KELLY KAY LUNSFORD,**
Appellant,

v.

**KARA ENGLE** and **JAKE PHILLIPS,**
Appellees.

No. 4D19-774

[January 22, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 502015DR011293 NB.

John F. Schutz of John F. Schutz, PL, Palm Beach Gardens, for appellant.

No appearance for appellees.

GERBER, J.

A grandmother appeals from a Florida court's order dismissing her action seeking temporary custody of her grandson. The Florida court dismissed the action for lack of initial custody jurisdiction, on the ground that an Oregon court already had exercised jurisdiction over the child.

The grandmother raises two arguments: (1) because Florida is the child's home state, and because the Oregon court's jurisdiction was limited to exercising temporary emergency jurisdiction while the child was in Oregon, the Florida court erred in not exercising initial custody jurisdiction over the child; and (2) the Florida court violated the grandmother's due process rights when it communicated with the Oregon court during a jurisdiction hearing without allowing the grandmother to participate.

We agree with both of the grandmother's arguments. Therefore, we reverse and remand for the Florida court to: (1) communicate to the Oregon court that the Florida court will be exercising initial custody jurisdiction over the child; (2) allow the parties to participate in this

communication if they so request; (3) disregard any orders which the Oregon court entered after the Oregon court had completed its exercise of temporary emergency jurisdiction; and (4) begin its exercise of initial custody jurisdiction with the grandmother's verified petition for temporary custody.

### *Procedural History*

In December 2014, the child was born in Palm Beach County. The child resided with his mother and grandmother at the grandmother's home in Palm Beach County until the child was three months old.

In March 2015, when the child was three months old, the mother and father left Florida with the child. Ten days later, the mother and father reached Oregon with the child. At that time, a domestic violence incident occurred when the father struck the mother while she was driving and the child was in a rear seat, causing them to get into an accident. The Oregon Department of Human Services ("Oregon DHS") sheltered the child and petitioned the Oregon court to exercise temporary emergency jurisdiction over the child. The Oregon court granted the petition. The mother returned to Florida without the child and resumed living at the grandmother's home.

In August 2015, when the child was eight months old, Oregon DHS fostered the child with his step-grandmother in Palm Beach County. Oregon DHS did not foster the child with the grandmother, because the mother was living with the grandmother. The mother later left town again with the father.

In November 2015, when the child was eleven months old, the grandmother, through counsel, filed a verified petition for temporary custody with the Florida circuit court. In the petition, the grandmother argued the Florida court had initial custody jurisdiction because:

> [T]he . . . child has resided continuously in the State of Florida since birth on December 14, 2014, until the travel from the state with his biological mother and alleged father in March 2015. [The child's] absence from jurisdiction from March 2015 through August 2015 was not due to establishment of residence in Oregon, or any other state. From August 2015 through the present, the . . . child continues to reside in Palm Beach County.

2

The grandmother also filed a motion for judicial communication with the Oregon court pursuant to section 61.519, Florida Statutes (2015). The grandmother filed the motion for judicial communication to clarify that Florida had initial custody jurisdiction.

The Florida court granted the grandmother's motion for judicial communication and scheduled a hearing with the Oregon court.

In May 2016, when the child was seventeen months old, the jurisdiction hearing occurred between the Florida court and the Oregon court. The Florida court began the hearing by saying it had received from the Oregon attorney general's office a memo opining that the Oregon court should retain jurisdiction over the child. The following discussion then occurred:

> [FLORIDA COURT] (to the grandmother's counsel): You want to go ahead and respond to [the Oregon attorney general's memo]?
>
> [GRANDMOTHER'S COUNSEL]: I do. And, Judge, let me give you a copy of some documentation that would appear to be pertinent to that issue. Judge, this case was --
>
> [OREGON COURT]: I'm sorry, just a minute. I'm sorry. I'm happy to have you all put on the record whatever objections you want, but this is a conferring call. It's not really a hearing. And, Judge, you agree with me that Oregon retains jurisdiction, and . . . I have other matters that I have to deal with. I'm not sure that I'm prepared to hear any objection on that side. Is there any reason why we need to do that?
>
> [FLORIDA COURT]: Not particularly. I mean, according to this memo, [the Department of Children and Families (DCF)] in Florida is not taking the case. Just going through the memo, it's undisputed that Oregon has jurisdiction and [has the child] under their care . . . that once the Court has temporary emergency jurisdiction, the Court and State become the home state of the Child so long as no custody proceeding in another state has been commenced and if determination, if that had been finalized. There is no action being taken by Florida. DCF has on multiple occasions declined to accept the case. Florida got this case through an [Interstate Compact on the Placement of Children] and is doing sort of a courtesy supervision. Oregon, again, has jurisdiction over the Child, but it's also in the best interest

3

that the case be heard. It's moving forward in Oregon. The biological parents have apparently conceded to Oregon having jurisdiction. The biological parents, one of them was in custody or is currently in custody in Texas. The Mother has wandered around and has come back to Florida, and at some point moved back in with the [grandmother] . . . . And then [Oregon DHS] . . . said, ["]You can't live with the mother if you're going to have the Child there; too; that's not in the Child's best interest.["] So - -

[OREGON COURT]: Well, that's not exactly accurate, but it's close enough at this point. If you need to refer to this memo - -

[FLORIDA COURT]: I think the memo outlines pretty clear that Oregon has jurisdiction over this case.

[OREGON COURT]: I agree with you. And . . . I have a lot of people in the courtroom here, and I don't see a need to hear anymore because we have been working on this and been talking about it for a long time. So Oregon will retain jurisdiction, and I think that pretty much concludes the matter. Is that good with you?

[FLORIDA COURT]: Good with me.

[OREGON COURT]: All right. Thank you very much.

In August 2016, when the child was twenty months old, Oregon DHS requested the Oregon court to terminate the mother's parental rights. Oregon DHS argued the mother was an unfit parent due to severe mental health issues and her behavior, which manifested neglect and abandonment of the child. Oregon DHS also argued termination was in the child's best interests, and it had "identified two potential adoptive placements, both of whom are relatives to [the child]." The request did not identify the relatives who were the potential adoptive placements.

Our record contains no information regarding the outcome of Oregon DHS's request for the Oregon court to terminate the mother's parental rights, or any other information regarding the Oregon court's proceedings.

In June 2018, when the child was nearly three-and-a-half years old, the grandmother, through new counsel, filed with the Florida court a motion to disregard the Oregon court's orders based on the Oregon court's

lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The motion argued, in pertinent part, "Any Orders entered in Oregon [were] void as Florida continued to have subject matter jurisdiction of all proceedings involving the . . . child. . . ."

The Florida court held a hearing on the grandmother's motion. At the hearing, the grandmother's new counsel raised five arguments: (1) lack of subject matter jurisdiction can be raised at any time; (2) under the UCCJEA, because the child was born in Florida and returned to Florida, Florida was the child's home state and therefore had initial custody jurisdiction; (3) also under the UCCJEA, the Oregon court had only temporary emergency jurisdiction; (4) the fact that DCF declined to accept supervision over the child, and that the parents had conceded to Oregon having jurisdiction, were irrelevant because parties cannot confer jurisdiction under the UCCJEA; and (5) under the UCCJEA, the Florida court and the Oregon court violated the grandmother's due process rights by not letting her original counsel be heard during the jurisdiction hearing two years earlier.

Despite the grandmother's arguments, the Florida court denied the grandmother's motion to disregard the Oregon court's orders based on the Oregon court's lack of jurisdiction. The Florida court then entered an order dismissing the grandmother's action for lack of jurisdiction.

This appeal followed. The grandmother raises two arguments: (1) under the UCCJEA, because Florida is the child's home state, and because the Oregon court had only temporary emergency jurisdiction, the Florida court erred in not exercising initial custody jurisdiction; and (2) the Florida court violated the grandmother's due process rights when it communicated with the Oregon court during the jurisdiction hearing without allowing the grandmother to participate.

### *Our Review*

"We review de novo [a] trial court's ruling that it lacked subject matter jurisdiction under the UCCJEA." *Barnes v. Barnes*, 124 So. 3d 994, 995 (Fla. 4th DCA 2013). Applying de novo review, we agree with the grandmother's arguments. We address each argument in turn.

### 1. *Subject Matter Jurisdiction Under the UCCJEA*

"The UCCJEA is a jurisdictional act that governs subject matter jurisdiction over child custody matters." *McAbee v. McAbee*, 259 So. 3d 134, 139 (Fla. 4th DCA 2018) (citation omitted).

5

"The general purposes of the UCCJEA are to avoid jurisdictional competition and conflict with other courts in child custody matters; promote cooperation with other courts; insure that a custody decree is rendered in the state which enjoys the superior position to decide what is in the best interest of the child; deter controversies and avoid relitigation of custody issues; facilitate enforcement of custody decrees; and promote uniformity of the laws governing custody issues." *McIndoo v. Atkinson*, 159 So. 3d 227, 229 n.1 (Fla. 4th DCA 2015) (citation omitted).

"Under the UCCJEA, jurisdictional priority lies in the child's home state." *Barnes*, 124 So. 3d at 995 (citation omitted). Within Florida's codification of the UCCJEA, that jurisdictional priority arises from sections 61.503(7) and 61.514(1)(a), Florida Statutes (2015).

Section 61.503(7) provides, "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child younger than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned.*" § 61.503(7), Fla. Stat. (2015) (emphasis added).

Section 61.514(1)(a), Florida Statutes (2015), provides, in pertinent part, "a court of this state has jurisdiction to make an initial custody determination . . . if . . . [t]*his state is the home state of the child on the date of the commencement of the proceeding . . . .*" § 61.514(1)(a), Fla. Stat. (2015) (emphasis added); *see also Barnes*, 124 So. 3d at 996 ("[S]ection 61.514(1)(a) permits the exercise of home state jurisdiction *if, at any time during the six months preceding the filing of the custody proceeding, Florida qualified as the child's home state.*") (emphasis added; citation omitted).

Within Oregon's codification of the UCCJEA, section 109.751, Oregon Statutes (2015), entitled "Temporary Emergency Jurisdiction," provides, in pertinent part:

> (1) A court of this state has temporary emergency jurisdiction if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse.

> (2) If there is no previous child custody determination that is entitled to be enforced . . . and a child custody proceeding has not been commenced in a court of a state having jurisdiction . . . a child custody determination made under this section

6

remains in effect *until an order is obtained from a court of a state having jurisdiction* . . . If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction . . . a child custody determination made under this section becomes a final determination if the determination so provides and this state becomes the home state of the child.

(3) *If* there is a previous child custody determination that is entitled to be enforced . . . or *a child custody proceeding has been commenced in a court of a state having jurisdiction* . . . any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction . . . The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

. . . .

OR. REV. STAT. § 109.751 (2015) (emphasis added).

Oregon's temporary emergency jurisdiction statute mirrors Florida's temporary emergency jurisdiction statute, section 61.517, Florida Statutes (2015). *See K.I. v. Dep't of Children & Families*, 70 So. 3d 749, 751 (Fla. 4th DCA 2011) (under section 61.517, "the court of another state may exercise temporary jurisdiction in an emergency situation to protect a child even though the court with initial custody jurisdiction has exclusive, continuing jurisdiction").

Here, Oregon had temporary emergency jurisdiction over the child when the child was injured in the Oregon car accident, because that event, caused by domestic violence between the father and mother while the child was in the car, constituted an emergency in which the child was subjected to mistreatment. OR. REV. STAT. § 109.751(1) (2015).

However, on the date that the grandmother filed her temporary custody petition in Florida, Florida had initial custody jurisdiction over that petition, because Florida remained the child's home state. § 61.514(1)(a), Fla. Stat. (2015). Florida remained the child's home state because within a portion of the six months before the grandmother's petition, the child was younger than six months of age, and had lived in Florida from birth. § 61.503(7), Fla. Stat. (2015). *Cf. Barnes,* 124 So. 3d at 996 ("The mother

left Florida after living here with the two children for approximately ten months and within the six-month period prior to the father's filing of the petition, thereby making Florida the home state of the two minor children at the time of the petition. Thus, the trial court erred in declining to exercise jurisdiction on the grounds that the home state of the minor children was Colorado under the UCCJEA.").

Based on the foregoing, the Florida court erred in: (1) failing to exercise initial custody jurisdiction during the hearing with the Oregon court after the grandmother filed her temporary custody petition; (2) denying the grandmother's motion to disregard the Oregon court's orders based on the Oregon court's lack of initial custody jurisdiction; and (3) dismissing the Florida case for lack of initial custody jurisdiction.

## 2. *Communication Between Courts*

Section 109.731, Oregon Statutes (2015), entitled "Communication Between Courts," provides, in pertinent part:

> (1) A court of this state may communicate with a court in another state concerning a proceeding arising under [the UCCJEA].
>
> (2) The court *may* allow the parties to participate in the communication. If the parties are not able to participate in the communication, they *must* be given the opportunity to present facts and legal arguments *before a decision on jurisdiction is made.*
>
> . . . .

OR. REV. STAT. § 109.731 (2015) (emphasis added). As can be seen under the Oregon communication statute, subsection (2)'s first sentence uses the permissive word "may" to describe the parties' ability to participate in the communication between courts. But subsection (2)'s second sentence uses the mandatory word "must" to describe the parties' ultimate ability to present facts and legal arguments before a jurisdiction decision is made.

Florida's version of the UCCJEA's "Communication Between Courts" statute, section 61.511, Florida Statutes (2015), contains mandatory language *throughout* subsection (2)'s second sentence. Section 61.511 provides, in pertinent part:

(1)  A court of this state may communicate with a court in another state concerning a proceeding arising under this part.

(2) The court *shall* allow the parties to participate in the communication.  If the parties elect to participate in the communication, they *must* be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

. . . .

§ 61.511, Fla. Stat. (2015) (emphasis added).

As our sister court held in *Johnson v. Johnson,* 88 So. 3d 335 (Fla. 2d DCA 2012), "[w]e construe the words 'shall' and 'must' in [section 61.511(2)] to impose a mandatory duty upon the trial court that must be performed before ruling."  *Id.* at 338 (emphasis added).  *See also* Antonin Scalia & Bryan A. Garner*, Reading Law: The Interpretation of Legal Texts* 112 (2012) (under the "Mandatory/Permissive Canon," "[m]andatory words impose a duty; permissive words grant discretion.").

Here, however, the Florida court erred in not performing this mandatory duty to "allow the parties to participate in the communication . . . [and] be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made."  § 61.511(2), Fla. Stat. (2015).  If the Florida court had performed this mandatory duty, then perhaps the Florida court and the Oregon court would have concluded that the Oregon attorney general's opinion incorrectly interpreted UCCJEA's jurisdictional requirements.

The facts that the Oregon court interrupted the grandmother's counsel from participating in the communication does not excuse the Florida court's failure to perform its duty under section 61.511.  Even though Oregon's section 109.731(2)'s first sentence uses the permissive word "may" to describe the parties' ability to participate in the communication between courts, section 109.731(2)'s second sentence uses the mandatory word "must" to describe the parties' ultimate ability to present facts and legal arguments before a jurisdiction is made.

Further, the fact that Florida's DCF declined to accept supervision over the child, and that the parents had conceded to Oregon having jurisdiction, should have been irrelevant to the Florida court.  Under the UCCJEA, neither DCF nor the parents could agree to initial custody jurisdiction in Oregon when no such jurisdiction existed.  *See In re D.N.H.W.*, 955 So. 2d 1236, 1238 (Fla. 2d DCA 2007) (under the UCCJEA,

"[p]arties cannot agree to jurisdiction over the subject matter where none exists, and the defense of lack of subject matter jurisdiction can be raised at any time").

In sum, given the ultimate mandatory nature of both Oregon's and Florida's statutes that a party has a due process right to be heard, the Florida court had a mandatory duty to correct the Oregon court and ensure that the grandmother's argument was heard. *See Johnson,* 88 So. 3d at 339 ("Section 61.511(2) operates as a due process provision.").

Thus, reversal is required on this ground as well. *See Haugabook v. Jeffcoat-Hultberg,* 219 So. 3d 65, 67 (Fla. 4th DCA 2016) ("[T]he failure to allow a party to participate in the communication with a court in another state requires reversal [under section 61.511].").

### *Conclusion*

Based on the foregoing, we reverse the Florida court's orders dismissing this case for lack of initial custody jurisdiction, and denying the grandmother's motion to disregard any orders which the Oregon court entered after the Oregon court had completed its exercise of temporary emergency jurisdiction.

On remand, the Florida court shall: (1) communicate to the Oregon court that the Florida court will be exercising initial custody jurisdiction over the child; (2) allow the parties to participate in this communication if they so request; (3) disregard any orders which the Oregon court entered after the Oregon court had completed its exercise of temporary emergency jurisdiction; and (4) begin its exercise of initial custody jurisdiction with the grandmother's verified petition for temporary custody.

*Reversed and remanded for proceedings consistent with this opinion.*

DAMOORGIAN and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

10