DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KELLY KAY LUNSFORD,**
Appellant,

v.

**KARA ENGLE** and **JAKE PHILLIPS,**
Appellees.

No. 4D19-774

[January 20, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 502015DR011293 NB.

John F. Schutz of John F. Schutz, PL, Palm Beach Gardens, for appellant.

No appearance for appellees.

Eddie Stephens and Caryn A. Stevens of Ward, Damon, Posner, Pheterson & Bleau, West Palm Beach, for interested parties Trent Engle and Kimberly Engle.

***ON INTERESTED PARTIES'***
***MOTION TO VACATE AND/OR RECALL MANDATE***

GERBER, J.

By order, we granted the interested parties' motion to vacate and/or recall our mandate issued February 7, 2020. We further ordered a new briefing schedule and granted the interested parties' motions to supplement the record and the appellant's motion to supplement the record. Based on our review of the now-complete record and the parties' subsequent briefs, we vacate our opinion issued January 22, 2020, and substitute the following opinion in its place.

A child's maternal grandmother appeals from a Florida court's orders: (1) dismissing the maternal grandmother's petition for temporary legal custody of the child; and (2) denying the maternal grandmother's motion

to disregard an Oregon court's orders based on the Oregon court's alleged lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The Florida court reasoned it lacked jurisdiction over the maternal grandmother's petition and motion because the Oregon court already had exercised jurisdiction over the child.

On appeal, the maternal grandmother raises two arguments: (1) because Florida is the child's home state, and because the Oregon court's jurisdiction was limited to exercising temporary emergency jurisdiction while the child was in Oregon, the Florida court erred in not exercising initial custody jurisdiction over the child; and (2) the Florida court violated the maternal grandmother's due process rights when it communicated with the Oregon court during a jurisdiction hearing without allowing the maternal grandmother's counsel to participate.

The appellees, who are the child's biological parents, have not responded in this appeal. The interested parties, who are the child's maternal grandfather and step-grandmother and adoptive parents, respond, in pertinent part: (1) the Florida court properly dismissed the maternal grandmother's petition for lack of jurisdiction, as the Oregon court already had jurisdiction over this matter under the UCCJEA, and such jurisdiction continued in Oregon through and including the final judgment of adoption; and (2) the Oregon court's final judgment of adoption became valid and binding on all persons after the expiration of one year from its entry, and such adoption's validity may not be questioned for any reason thereafter under Oregon law.

We agree with the interested parties' arguments. Therefore, we affirm the Florida court's orders dismissing the maternal grandmother's petition and denying the maternal grandmother's motion to disregard the Oregon court's orders. Although we agree with the maternal grandmother that the Florida court erred in communicating with the Oregon court during the jurisdiction hearing without allowing her counsel to participate, we conclude such error was harmless under the facts of this case.

### *Procedural History*

In December 2014, the child was born in Palm Beach County. The child resided with the biological mother and the maternal grandmother at the maternal grandmother's home in Palm Beach County.

In February 2015, when the child was two months old, the biological mother and the biological father left Florida with the child. By March 2015, the mother and father had reached Oregon with the child. At that

time, a domestic violence incident occurred when the father struck the mother while she was driving and the child was in a rear seat, causing them to get into a rollover accident.

The Oregon Department of Human Services ("Oregon DHS") immediately sheltered the child and petitioned the Oregon court to exercise temporary emergency jurisdiction over the child. The Oregon circuit court granted the petition and placed the child in Oregon DHS's temporary custody. The biological mother returned to Florida without the child or the father, and resumed living at the maternal grandmother's home.

In May 2015, the Oregon court entered orders finding the child was within the Oregon court's jurisdiction, both biological parents had admitted to Oregon DHS's petitions, the Oregon court had placed the child in Oregon DHS's temporary custody, and both biological parents had acquiesced to the Oregon court's continuing jurisdiction over the child. Later that month, the Oregon court conducted a disposition hearing. The Oregon court entered an order noting the biological mother had gone back to Florida to live with the maternal grandmother, neither biological parent had met the conditions to return the child for in-home placement, and the child's best interests required the child remain in Oregon DHS's custody for care, placement and supervision.

In the summer of 2015, Oregon DHS began conducting home studies to place the child with relatives. Oregon DHS determined the maternal grandmother would not be an appropriate placement for the child because the biological mother was living with the maternal grandmother. After that determination, the mother left Florida and rejoined the father. At some point, the mother and father reached Texas, where the father was arrested for another domestic violence incident against the mother.

In August 2015, Oregon DHS approved the interested parties as an appropriate foster care placement for the child, and transported the child from Oregon to Florida to live with the interested parties. By this time, the child was eight months old.

In November 2015, when the child was eleven months old, the maternal grandmother, through counsel, filed a verified petition for temporary custody with the Florida circuit court. In the petition, the maternal grandmother argued the Florida court had initial custody jurisdiction because:

> [T]he ... child has resided continuously in the State of Florida since birth on December 14, 2014, until the travel from the

3

state with his biological mother and alleged father in March 2015. [The child's] absence from [the] jurisdiction from March 2015 through August 2015 was not due to establishment of residence in Oregon, or any other state. From August 2015 through the present, the ... child continues to reside in Palm Beach County.

The maternal grandmother did not serve her petition upon Oregon DHS, which, at the time, remained the child's legal guardian and custodian.

In January and February 2016, after the child turned one year old, the Oregon court held permanency hearings to assess the biological parents' compliance with the Oregon DHS case plans. Because the biological parents had made no progress to comply with the case plans, Oregon DHS modified the plan goal for the child from "reunification" to "adoption." Thereafter, Oregon DHS filed petitions with the Oregon court to terminate the biological parents' parental rights.

Also in February 2016, the maternal grandmother, through counsel, filed with the Oregon court a motion for limited participation, seeking to pursue permanent guardianship of the minor child, or to be designated as the alternative temporary placement for the minor child, and also seeking visitation with the minor child. [Unlike Florida, Oregon provides a statutory right for grandparents to request visitation with the minor grandchild. OR. REV. STAT. § 419B.876 (2016).] The Oregon court denied the maternal grandmother's motion.

In March 2016, when the child was fifteen months old, the maternal grandmother filed with the Florida court a motion for judicial communication with the Oregon court pursuant to section 61.519, Florida Statutes (2015). The maternal grandmother's motion alleged she was seeking to argue that Florida, not Oregon, had initial custody jurisdiction. The Florida court granted the maternal grandmother's motion for judicial communication and scheduled a hearing with the Oregon court.

In May 2016, when the child was seventeen months old, the jurisdiction hearing occurred between the Florida court and the Oregon court. The Florida court began the hearing by saying it had received from the Oregon attorney general's office a memo opining that the Oregon court should retain jurisdiction over the child. The following discussion then occurred:

> [FLORIDA COURT] (to the grandmother's counsel): You want to go ahead and respond to [the Oregon attorney general's memo]?

4

[MATERNAL GRANDMOTHER'S COUNSEL]: I do. And, Judge, let me give you a copy of some documentation that would appear to be pertinent to that issue. Judge, this case was --

[OREGON COURT]: I'm sorry, just a minute. I'm sorry. I'm happy to have you all put on the record whatever objections you want, but this is a conferring call. It's not really a hearing. And, Judge, you agree with me that Oregon retains jurisdiction, and ... I have other matters that I have to deal with. I'm not sure that I'm prepared to hear any objection on that side. Is there any reason why we need to do that?

[FLORIDA COURT]: Not particularly. I mean, according to this memo, [the Department of Children and Families (DCF)] in Florida is not taking the case. Just going through the memo, it's undisputed that Oregon has jurisdiction and [has the child] under their care ... that once the Court has temporary emergency jurisdiction, the Court and State become the home state of the Child so long as no custody proceeding in another state has been commenced and if determination, if that had been finalized. There is no action being taken by Florida. DCF has on multiple occasions declined to accept the case. Florida got this case through an [Interstate Compact on the Placement of Children] and is doing sort of a courtesy supervision. Oregon, again, has jurisdiction over the Child, but it's also in the best interest that the case be heard. It's moving forward in Oregon. The biological parents have apparently conceded to Oregon having jurisdiction. The biological parents, one of them was in custody or is currently in custody in Texas. The Mother has wandered around and has come back to Florida, and at some point moved back in with the [maternal grandmother] .... And then [Oregon DHS] ... said, ["]You can't live with the [biological] mother if you're going to have the Child there; too; that's not in the Child's best interest.["] So - -

[OREGON COURT]: Well, that's not exactly accurate, but it's close enough at this point. If you need to refer to this memo - -

[FLORIDA COURT]: I think the memo outlines pretty clear that Oregon has jurisdiction over this case.

[OREGON COURT]: I agree with you. And ... I have a lot of people in the courtroom here, and I don't see a need to hear anymore because we have been working on this and been talking about it for a long time. So Oregon will retain jurisdiction, and I think that pretty much concludes the matter. Is that good with you?

[FLORIDA COURT]: Good with me.

[OREGON COURT]: All right. Thank you very much.

In July and August 2016, when the child was nearly two years old, the Oregon court terminated the biological mother's and the biological father's parental rights.

In March 2018, when the child was over three years old, the Oregon court entered a final judgment granting the interested parties' adoption of the child. The State of Florida thereafter issued a birth certificate identifying the interested parties as the child's legal parents.

In June 2018, when the child was nearly three-and-a-half years old, the maternal grandmother, through new counsel, filed with the Florida court a motion to disregard the Oregon court's orders based on the Oregon court's alleged lack of jurisdiction under the UCCJEA. The motion was the first action which the maternal grandmother had taken in either the Oregon court or the Florida court in over two years. The maternal grandmother did not serve the motion on either Oregon DHS or the interested parties.

The maternal grandmother's motion argued, in pertinent part, "Any Orders entered in Oregon [were] void as Florida continued to have subject matter jurisdiction of all proceedings involving the ... child." At the motion hearing, which only the maternal grandmother's new counsel attended, the grandmother's new counsel further argued: (1) lack of subject matter jurisdiction can be raised at any time; (2) under the UCCJEA, because the child was born in Florida and returned to Florida, Florida was the child's home state and therefore had initial custody jurisdiction; (3) also under the UCCJEA, the Oregon court had only temporary emergency jurisdiction; (4) the facts that Florida DCF declined to accept supervision over the child, and that the biological parents had conceded to Oregon having jurisdiction, were irrelevant because parties cannot confer jurisdiction under the UCCJEA; and (5) under the UCCJEA, the Florida court and the Oregon court violated the maternal grandmother's due process rights by

not letting her original counsel be heard during the jurisdiction hearing two years earlier.

The Florida court denied the maternal grandmother's motion. The Florida court then entered an order dismissing the maternal grandmother's petition for temporary custody on the ground the Florida court lacked initial custody jurisdiction because the Oregon court already had exercised jurisdiction over the child.

This appeal followed. The maternal grandmother raises two arguments: (1) because Florida is the child's home state, and because the Oregon court's jurisdiction was limited to exercising temporary emergency jurisdiction while the child was in Oregon, the Florida court erred in not exercising initial custody jurisdiction over the child; and (2) the Florida court violated the maternal grandmother's due process rights when it communicated with the Oregon court during a jurisdiction hearing without allowing the maternal grandmother's counsel to participate.

The interested parties respond, in pertinent part: (1) the Florida court properly dismissed the maternal grandmother's petition for lack of jurisdiction, as the Oregon court already had jurisdiction over this matter under the UCCJEA, and such jurisdiction continued in Oregon through and including the final judgment of adoption; and (2) the Oregon court's final judgment of adoption became valid and binding on all persons after the expiration of one year from its entry, and such adoption's validity may not be questioned for any reason thereafter under Oregon law.

### *Our Review*

"We review de novo [a] trial court's ruling that it lacked subject matter jurisdiction under the UCCJEA." *Barnes v. Barnes*, 124 So. 3d 994, 995 (Fla. 4th DCA 2013).

Applying de novo review, we agree with the interested parties' arguments. Therefore, we affirm the Florida court's orders dismissing the maternal grandmother's petition and denying the maternal grandmother's motion to disregard the Oregon court's orders. Although we agree with the maternal grandmother that the Florida court erred in communicating with the Oregon court during the jurisdiction hearing without allowing her counsel to participate, we conclude such error was harmless under the facts of this case. We address each argument in turn.

### 1. *The Florida court properly found it lacked jurisdiction.*

"The UCCJEA is a jurisdictional act that governs subject matter jurisdiction over child custody matters." *McAbee v. McAbee*, 259 So. 3d 134, 139 (Fla. 4th DCA 2018) (citation omitted).

"The general purposes of the UCCJEA are to avoid jurisdictional competition and conflict with other courts in child custody matters; promote cooperation with other courts; insure that a custody decree is rendered in the state which enjoys the superior position to decide what is in the best interest of the child; deter controversies and avoid relitigation of custody issues; facilitate enforcement of custody decrees; and promote uniformity of the laws governing custody issues." *McIndoo v. Atkinson*, 159 So. 3d 227, 229 n.1 (Fla. 4th DCA 2015) (citation omitted).

Both Florida and Oregon have adopted the UCCJEA and, as a result, both Florida's and Oregon's UCCJEA statutes are nearly identical in most respects. *Compare* §§ 61.501–61.542, Fla. Stat. (2015), *with* OR. REV. STAT. §§ 109.701–109.834 (2015).

Within Oregon's codification of the UCCJEA, section 109.751, Oregon Revised Statutes (2015), entitled "Temporary Emergency Jurisdiction," provides, in pertinent part:

> (1)  A court of this state has temporary emergency jurisdiction if the child is present in this state and … it is necessary in an emergency to protect the child because the child … is subjected to or threatened with mistreatment or abuse.
>
> (2)  *If there is no previous child custody determination that is entitled to be enforced … and a child custody proceeding has not been commenced in a court of a state having jurisdiction … a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction … If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction … a child custody determination made under this section becomes a final determination if the determination so provides and this state becomes the home state of the child.*
>
> (3)  If there is a previous child custody determination that is entitled to be enforced … or a child custody proceeding has been commenced in a court of a state having jurisdiction … any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an

8

order from the state having jurisdiction …. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

….

OR. REV. STAT. § 109.751 (2015) (emphasis added).

Oregon's temporary emergency jurisdiction statute mirrors Florida's temporary emergency jurisdiction statute, section 61.517, Florida Statutes (2015). *See K.I. v. Dep't of Children & Families*, 70 So. 3d 749, 751 (Fla. 4th DCA 2011) (under section 61.517(1), "the court of another state may exercise temporary jurisdiction in an emergency situation to protect a child even though the court with initial custody jurisdiction has exclusive, continuing jurisdiction").

Here, the Oregon court, under section 109.751(1), Oregon Revised Statutes (2015), had temporary emergency jurisdiction over the child when the child was injured in the Oregon car accident, because that event, caused by domestic violence between the father and mother while the child was in the car, constituted an emergency in which the child was subjected to mistreatment.

Because the maternal grandmother's custody petition was not commenced until after the Oregon court began exercising temporary emergency jurisdiction, the Oregon court was permitted, under section 109.751(2), Oregon Revised Statutes (2015), to continue "exercising temporary jurisdiction to make a custody determination … or even become 'a final determination,' if no other court steps up." *Dep't of Human Servs. v. J. S.*, 464 P.3d 157, 165 (Or. Ct. App. 2020). The Oregon court made a final determination when it terminated the biological parents' parental rights, and then approved the interested parties' adoption of the child.

Based on the foregoing, the Florida court correctly found the Oregon court had jurisdiction over the child under the UCCJEA, and correctly dismissed the maternal grandmother's petition for lack of jurisdiction.

### 2. The Oregon court's adoption judgment became final and binding on all persons after one year from its entry.

In addition to the foregoing, by the time the maternal grandmother filed this appeal to contest the Florida court's lack of subject matter jurisdiction determination, the child's custody determination was already final.

9

Section 109.381(3), Oregon Revised Statutes (2015), states, in pertinent part:

> *After the expiration of one year from the entry of a judgment of adoption in this state the validity of the adoption shall be binding on all persons,* and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned the child and consented to the entry of such judgment of adoption, *and that the child became the lawful child of the adoptive parents or parent at the time when the judgment of adoption was rendered, <u>all irrespective of jurisdictional or other defects in the adoption proceeding. After the expiration of the one-year period no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby</u>.*
> ...

OR. REV. STAT. § 109.381(3) (emphases added); *see also J.B.D. v. Plan Loving Adoptions Now, Inc.*, 178 P.3d 266, 270 (Or. Ct. App. 2008) (section 109.381(3) "is a statute of limitation.")

Here, the Oregon court entered its adoption judgment in the interested parties' favor on March 5, 2018. The maternal grandmother filed her notice of appeal with this court on March 18, 2019. Thus, even if we were to have concluded that a jurisdictional defect in the Oregon proceeding existed (which we do not, as indicated above), the Oregon adoption judgment became final and binding upon all persons. As such, we have no authority to question the validity of the adoption for any reason in this collateral proceeding.

### 3. *The Florida court's error in communicating with the Oregon court during the jurisdiction hearing without allowing the maternal grandmother's counsel to participate was harmless.*

Section 109.731, Oregon Revised Statutes (2015), entitled "Communication Between Courts," provides, in pertinent part:

> (1) A court of this state may communicate with a court in another state concerning a proceeding arising under [the UCCJEA].

10

(2) The court *may* allow the parties to participate in the communication.  If the parties are not able to participate in the communication, they *must* be given the opportunity to present facts and legal arguments *before a decision on jurisdiction is made.*

....

OR. REV. STAT. § 109.731 (2015) (emphasis added).  As can be seen under the Oregon communication statute, subsection (2)'s first sentence uses the permissive word "may" to describe the parties' ability to participate in the communication between courts.  But subsection (2)'s second sentence uses the mandatory word "must" to describe the parties' ultimate ability to present facts and legal arguments before a jurisdiction decision is made.

Florida's version of the UCCJEA's "Communication Between Courts" statute, section 61.511, Florida Statutes (2015), contains mandatory language *throughout* subsection (2)'s second sentence.  Section 61.511 provides, in pertinent part:

(1)  A court of this state may communicate with a court in another state concerning a proceeding arising under this part.

(2) The court *shall* allow the parties to participate in the communication.  If the parties elect to participate in the communication, they *must* be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

....

§ 61.511, Fla. Stat. (2015) (emphasis added).

As our sister court held in *Johnson v. Johnson*, 88 So. 3d 335 (Fla. 2d DCA 2012), "[w]e construe the words 'shall' and 'must' in [section 61.511(2)] to impose a mandatory duty upon the trial court that must be performed before ruling."  *Id.* at 338 (emphasis added).  *See also* Antonin Scalia & Bryan A. Garner*, Reading Law:  The Interpretation of Legal Texts* 112 (2012) (under the "Mandatory/Permissive Canon," "[m]andatory words impose a duty; permissive words grant discretion.").

Here, regardless of the Oregon court's interruption, the Florida court erred in not allowing the maternal grandmother's counsel "to participate in the communication ... [and] be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made."  §

11

61.511(2), Fla. Stat. (2015). However, we consider this procedural error to be harmless in light of the adoption's finality. The adoption's finality makes this case distinguishable from our more general precedent addressing section 61.511(2). *See Haugabook v. Jeffcoat-Hultberg*, 219 So. 3d 65, 67 (Fla. 4th DCA 2016) ("[T]he failure to allow a party to participate in the communication with a court in another state requires reversal [under section 61.511].").

## *Conclusion*

Based on the foregoing, we affirm the Florida court's orders dismissing the maternal grandmother's petition for temporary legal custody of the child, and denying the grandmother's motion to disregard the Oregon court's orders.

*Affirmed.*

DAMOORGIAN and KLINGENSMITH, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***